## 43907. CRAWFORD v. THE STATE.
(351 SE2d 199)

MARSHALL, Chief Justice.

Michael James Crawford appeals from his conviction of the murder of his wife, Felicia, and his life sentence.[1] We affirm.

1. The appellant urges the general grounds, arguing that the circumstantial evidence does not show the requisite intent to sustain a conviction, not excluding the reasonable hypothesis of his defense of accident.

Evidence was adduced to the following effect. The Crawfords and the Wilsons lived next door to each other in the Little River Trailer

---

[1] The crime was committed on March 3, 1986. The appellant was convicted and sentenced on May 28, 1986. A motion for new trial was filed on June 4, 1986, and heard and overruled on August 6, 1986. The transcript of evidence was filed in the trial court on July 9, 1986. Notice of appeal was filed on August 29, 1986. After briefing, the case was submitted for decision without oral argument on November 7, 1986.

Park until financial problems being experienced by both families led to a decision to share a house. On the date of the homicide, the Crawfords pawned their stereo equipment to raise $40. Mrs. Crawford, the victim, was five to six months pregnant. The appellant wanted to get away from her for "a little bit" because she was "in a crying and bitching mood." He and Mr. Wilson left without telling her where they were going, drank two pitchers of beer at a local pizza parlor, purchased $25 worth of marijuana, and drove home, where Mrs. Crawford confronted appellant Crawford at the entry way, struck him, and called him a "G__ d____d liar." The Crawfords then argued with, and shouted at, each other, first in the living room, then in the bedroom. Wilson heard the appellant slap the victim, and came to tell them to do their fighting outside. Mrs. Crawford told Wilson, "He's trying to beat the h____ out of me," and the appellant promised Wilson that he would not strike his wife again. Wilson left the room, then heard the victim scream for help, followed by a loud noise. Wilson forced his way into the room, and was confronted by the appellant, who spun around to meet Wilson while the appellant was holding "an opened" shotgun. Mrs. Crawford was lying face down on the floor, making gurgling sounds as blood came from her mouth. Wilson had to tackle the appellant and forcibly wrest the shotgun from the appellant. The appellant testified that he did not intend to shoot her; that the shotgun had accidentally discharged as he took it from the rack when she told him to get his gun and other things and leave. Conditions at the crime scene indicated that there had been a scuffle. A broken piece of the gun rack lay on the floor, but the rack itself remained attached to the door. Mrs. Crawford died of blood loss from a shotgun blast fired at short range. There was expert testimony that the appellant had taken the shotgun to his shoulder and fired it in the normal firing position, and that, based on the alignment of the victim's organs and the angle of the wound, when the victim was shot, she was standing, with her arms raised in a defensive gesture. (The appellant testified that she was seated on the end of the bed at the time she was shot.) The weapon was test-fired, from which it was determined that it would not fire accidentally; rather, that it was a double-action weapon, requiring the hammer to be cocked and the trigger pulled before firing, and that it could be discharged only by application of eight foot-pounds of pressure to the trigger.

When the evidence here (which was direct as well as circumstantial) is construed in the light of upholding the verdict, a rational trier of fact could have found the crime of murder beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. At the conclusion of her testimony as a state's witness, the victim's mother turned to the jury and made the voluntary, unsolicited

statement, "He killed my daughter. Don't let him get away with this." The appellant made a motion for new trial out of the presence of the jury, which motion was denied. When the jury returned, the trial judge gave the jury curative instructions, directed them to disregard the unsolicited remarks, rebuked the prosecutor for having undergone the risk of calling such a witness for no substantial likely purpose, and polled the jury to determine that all the jurors could and would abide by the court's instructions. The appellant then renewed his motion for mistrial, the overruling of which is enumerated as error.

" 'Where a witness for the State in a criminal case voluntarily injects into the trial improper and prejudicial matter, on motion for a mistrial based thereon, whether mistrial must be granted as the only corrective measure or whether the prejudicial effect can be corrected by withdrawing testimony from the consideration of the jury under proper instructions, is a matter ordinarily in the discretion of the trial court.' [Cit.]" *Willingham v. State*, 118 Ga. App. 321, 324 (163 SE2d 317) (1968); *Bell v. State*, 159 Ga. App. 621, 622 (3) (284 SE2d 639) (1981). The trial court's ruling will not be disturbed on appeal absent an abuse of discretion, which does not exist if the curative instructions given can serve to prevent the alleged harmful testimony from having any prejudicial impact and/or the jury indicates that it can follow the instructions and will not consider any improper prejudicial statements or testimony. *Flowers v. State*, 252 Ga. 476 (2) (314 SE2d 206) (1984) and cits.; *Dunn v. State*, 251 Ga. 731, 734 (4) (309 SE2d 370) (1983) and cits.; *Spraggins v. State*, 240 Ga. 759 (2) (243 SE2d 20) (1978).

It is highly improbable that the witness' remarks influenced the outcome of the case, in view of the strong weight of the evidence against the appellant, as discussed in Division 1, supra. See *Hooks v. State*, 253 Ga. 141 (4) (317 SE2d 531) (1984). Under the circumstances of this case, the trial court did not abuse its discretion in refusing to grant a mistrial.

3. The appellant challenges the court's charge that "you may infer that a person of sound mind and discretion intends to accomplish the natural and probable consequences of his intentional act. And if a person of sound mind and discretion intentionally and without justification uses a deadly weapon or instrumentality in the manner in which such weapon or instrumentality is ordinarily used, and thereby causes the death of a human being, you may infer the intent to kill of [sic] malice aforethought that I have instructed you; provided that you find that the evidence warrants such an inference." The appellant argues that this charge is burden-shifting, falling within the proscription of *Sandstrom v. Montana*, 442 U. S. 510 (99 SC 2450, 61 LE2d 39) (1979).

The charge here was cast in terms of "inference," rather than the

disapproved "rebuttable presumption," and is substantially identical to a charge we have specifically approved. *Hosch v. State*, 246 Ga. 417, 420 (n. 2) (271 SE2d 817) (1980). See also *Denson v. State*, 253 Ga. 93 (4) (316 SE2d 469) (1984); *Trenor v. State*, 252 Ga. 264 (3) (313 SE2d 482) (1984).

*Judgment affirmed. All the Justices concur.*

DECIDED JANUARY 7, 1987.
Murder. Cherokee Superior Court. Before Judge Mills.
*Barry W. Bishop,* for appellant.
*Rafe Banks III, District Attorney, Garry T. Moss, Assistant District Attorney, Michael J. Bowers, Attorney General, J. Michael Davis, Assistant Attorney General,* for appellee.