A94A0894. RECTOR v. THE STATE.
(444 SE2d 862)

McMURRAY, Presiding Judge.

Defendant was indicted for armed robbery. The evidence adduced at a jury trial reveals that defendant went into an Atlanta drug store, displayed a pistol and ordered the store's assistant manager "to open the safe [and] give [the money] to me." The jury found defendant guilty of armed robbery. This appeal followed the denial of his motion for new trial. *Held*:

1. Defendant first challenges the sufficiency of the evidence. At trial, the victim testified that he was robbed at gunpoint while employed as the assistant manager of the "Big B Drugs at 455 North Avenue . . ." and that he is "about eighty percent sure that [defendant] was the [perpetrator of the armed robbery]." Another store employee testified that she was present on the morning of the armed robbery and she positively identified defendant as the perpetrator of the crime charged. Elaine Lattimore testified that defendant came to her home on the morning of the armed robbery; that she then noticed that defendant "had [a pistol and] some money and [that defendant] said that he had hit a lick." Lattimore explained that the expression, "hit a lick," means "in the streets, the slang words, . . . robbery, I came up with some money." This evidence was sufficient to enable a rational trier of fact to find the defendant guilty, beyond a reasonable doubt, of the crime of armed robbery as alleged in the indictment. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560); *Edwards v. State*, 209 Ga. App. 304 (1) (433 SE2d 619).

2. Defendant, who is black, contends the trial court erred in overruling his objection based on *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69), arguing the State's use of peremptory strikes to exclude three prospective black jurors was "based upon an imper-

missible racial stereotype."[1]

The State's attorney exercised only three of six available peremptory strikes, but she employed them all to exclude blacks from jury service. This fact and admissions that eighteen of thirty-four qualified panelists were black and that the jury comprised five blacks and seven whites raises the concern of prima facie discrimination. See *Gamble v. State*, 257 Ga. 325, 326 (3) (357 SE2d 792); *Ford v. State*, 262 Ga. 558, 559 (1), 560 (4) (423 SE2d 245); *Hill v. State*, 263 Ga. 37, 42 (9), 43 (427 SE2d 770); *Osborne v. State*, 263 Ga. 214, 215 (3) (430 SE2d 576). However, "[t]he preliminary issue of whether [defendant] established a prima facie case of discrimination is moot because the prosecutor offered purportedly race-neutral explanations for the peremptory challenges and the trial court ruled on the ultimate question of intentional discrimination. *Lewis v. State*, 262 Ga. 679, 680 (2) (424 SE2d 626) (1993). We therefore need only address the sufficiency of the prosecutor's explanations for the exercise of the [three] peremptory strikes of [prospective] black [jurors. With this in mind, we note that a] 'prosecutor's explanations must be strong enough to *overcome* the prima facie case.' (Emphasis in original; citation and punctuation omitted.) *Kelly v. State*, 209 Ga. App. 789 (1) (b) (434 SE2d 743) (1993). [Further,] '[t]he exercise of a peremptory challenge may not be based on either the race of the juror or racial stereotypes held by the party. (Cit.)' *Congdon v. State*, 262 Ga. 683, 685 (424 SE2d 630) (1993). 'In order for the State to carry its *Batson* burden, the prosecutor (must) explain his striking of the jurors at issue by articulating a racially-neutral reason related to the particular case. (Cit.)' *Lewis v. State*, 262 Ga. at 680 (2)." *Chunn v. State*, 210 Ga. App. 209, 210 (2) (435 SE2d 728).

In the case sub judice, the State's attorney explained that she excluded a black male because "he was under investigation for arson and attempting to burn his grandmother's house . . ." and that she struck a black female because "her brother is charged with murder up in Greene County. . . ." The trial court found these explanations racially neutral and sustained the State's use of peremptory strikes. The trial court did not abuse its discretion in so ruling. See *Davis v. State*, 263 Ga. 5, 7 (10), 8-9 (426 SE2d 844) (1993). However, the same cannot be said about the decision to allow the State's use of a

---

[1] The State contends defendant failed to substantiate any claim of racial discrimination because "[a]ppellant's counsel merely stated numbers to the court establishing his version of the venire's makeup." This contention is without merit. "Although mere colloquy between counsel and the court is insufficient to perfect the record for appellate review of a *Batson* claim, *Shaw v. State*, 201 Ga. App. 438, 440 (1) (411 SE2d 534) (1991), the statement of a prosecutor [or defense attorney] 'for the record' is prima facie true and if, as [in the case sub judice the State] does not object, it serves in the nature of a stipulation. *Morris v. State*, 228 Ga. 39, 48-49 (11) (184 SE2d 82) (1971)." *Staples v. State*, 209 Ga. App. 802 (434 SE2d 757).

peremptory strike to exclude another black female from the jury.

The hearing conducted pursuant to *Batson v. Kentucky,* 476 U. S. 79, supra, pertinently reveals the following: "[STATE'S AT-TORNEY]: Judge, I struck juror number three . . . for a variety of reasons . . . She finished high school but that was it. She is a cook at the Sheraton and both of her boys are janitors. She is divorced and she had a big gold tooth with a pattern on it right in the front of her mouth. . . . I felt that all things considered — she was originally from Vienna, Georgia. I thought all things considered, that [this prospective juror], with a minor education, a lack of — with the big gold tooth — and I just personally felt that with two boys, that she didn't, couldn't say where they were janitors and she had been a cook just a couple of years at the Sheraton, that I would choose to — especially with the gold in the mouth, would choose to strike her. . . . THE COURT: Okay. . . . I have some concerns about the gold tooth and the gold in the mouth, whether that is a racially neutral reason or whether that's a stereotype. [STATE'S ATTORNEY]: Well, Judge, I think that, frankly, it would be a matter of, with all of the considerations that we have, that I had here, the fact that she only finished high school, which there were others that only finished high school but she only finished high school and she had a lot of gold in her mouth — and how would that be a stereotype? If there was a white person who only finished high school with a bunch of gold in their mouth, but there wasn't, I don't see that would be a stereotype. That he, that she was a cook and only — her sons had, that she didn't have any further contact, that I'm aware of, other than the fact that they were janitors and she didn't say where. . . . THE COURT: Is your concern with her general intelligence, educational level? [STATE'S ATTORNEY]: Basically. THE COURT: Can you elaborate on your concern? [STATE'S ATTORNEY]: I know in the past, [Defense Counsel] Hatcher has stated . . . he prefers to put people on the jury who have low educational levels. That's what he wants. In this case, I would be arguing, you know, the deal with Elaine Lattimore[, a State's witness]. And I was looking to put people on who would understand that while Elaine Lattimore may not be telling the truth on the stand, that there were extenuating circumstances that would follow the pattern between what this woman says and what she really means. Although, in this case, she had two boys and the defendant in this case — and about the same age as this defendant. And the whole pattern made me decide — and with the — I'll be honest, with the gold in the mouth and the low educational level that [Defense Counsel] Hatcher likes [and] because I knew that, as a matter of fact, I said to my investigator, Mr. Tindol, what about her? Should we keep her? Well, if you don't strike her, he will keep her because she has only got a high school education. Her sons are janitors and he is just

— so, he will put her on the jury and with the — just what I felt, that she — her educational level would not be able . . . to follow the pattern. [DEFENSE COUNSEL] BARKIN: Your Honor, we would respond that those reasons are not sufficient. They are not racially neutral. First of all, there were other members of the jury who had low educational levels. She is not the only member the State accepted with low educational levels. Of course, the idea that because she would somehow be acceptable to the defense is a racially neutral reason for the State to strike them doesn't make any sense. The idea that her sons, she had two sons and they are janitors, that does not in any way show that she is not prepared to be a fair juror or shows any articulable reason that — to strike someone. A janitor is a perfectly fine occupation and there is plenty of people, law abiding citizens, who are janitors. There is no suggestion her sons commit crimes. It's simply they have low paying, low status jobs and she herself has a low paying, low status job. We are prepared — in many cases, the black people have gold teeth as a sign of status in their community. It's an aspect of their community. I have seen — and we can make a proper record of this if the court feels necessary, but in my own personal experience, many of my defendants, who are mostly black, have gold teeth and most of the people in my community of white people, middle class, do not have gold teeth. So I think the idea that somebody has a gold tooth is a race neutral way of striking them is — I would disagree very strongly with that. It is an attribute of a person that has nothing to do with their ability to perform as a juror. And we believe it is just a pretextural reason and is not sufficient. [STATE'S ATTORNEY]: Judge, I'm taking all the reasons I gave you together into one package, not broken down into individual pieces the way [Defense Counsel] Barkin is presenting them to you. All put together, what I know about [Defense Counsel] Hatcher, his desire for non-educated people, what I found out about her, coupled with the fact she had a big gold tooth in her mouth — and [there] were plenty of African Americans who did not. So if it's a sign of status, gee, she must be the highest status person out there, because no one else had it. No one else had a gold tooth out there. So I disagree with [Defense Counsel] Barkin that it is certainly not a sign of status. It's a sign of maybe a lack of — I don't know what. To me, having a gold tooth in the front of your mouth is almost a kind of a — I don't know. It's kind of cool or something like that. It's almost a thumb your nose at society kind of thing to me. And, then, that's the, my approach and that's simply my interpretation of that and that's why I removed her, all of the reasons I have given together. [Defense Counsel] BARKIN: I would respond, your honor, if you can't break down the reasons and look at each one independently, then they are not really articulable and reasonable. Really, what the District Attorney is saying, she didn't want

this juror for a group of reasons, any one of which . . . is individually acceptable. We would argue that is exactly what Batson is designed to eliminate is people of African American descent being stricken from a jury because the prosecutor doesn't like them but can't articulate why. THE COURT: Okay. . . . If all she had told me was about the gold tooth, then I would not accept that explanation in and of itself. But you have told me you are striking her because of her educational level and because of her occupation, . . . because of the fact she has sons that you think she may identify the defendant because of having two sons approximately the same age. And I think taken altogether, I'll accept that as a racially neutral strike. [STATE'S ATTORNEY]: And the thumbing your nose at society, that's just how I feel. That's my opinion. But I'm entitled to that. As prosecutor, I can't abandon my own opinions. And I think the whole package, to me, and may I also say, Judge, this is one of the reasons why the prima facie showing needs to be, I think, honored somewhat. I know that the Weems case says get away from it. But after Weems came Ford and that articulates the new standard. And absent showing that, you know, it opens you up to arguments like I removed her because of race in spite of the fact that I only removed three black people in a panel of fifty fifty; that there are numerous black people that I accepted and that are on the panel that were removed by [Defense Counsel] Hatcher."

A determination by a trial court of the existence of racial discrimination in the jury selection process will not be overturned on appeal unless clearly erroneous. *Gamble v. State*, 257 Ga. 325, 326 (5), 327, supra. In the case sub judice, the trial court was concerned "about the gold tooth and the gold in the mouth [explanation given by the State and she questioned] whether that is a racially neutral reason or whether that's a stereotype." In response, the State's attorney gave her view of the nature of any person with a monogrammed gold tooth and stated that her opinion is not based on a racial stereotype. However, the State's attorney failed to explain how the prospective juror's gold tooth related in any way to the outcome of the case sub judice and the trial court ruled that she "would not accept that explanation in and of itself." We find no abuse of discretion in this ruling. See *Chunn v. State*, 210 Ga. App. 209, 210 (2), supra. However, the trial court erred in ruling that other purportedly race neutral explanations cured the element of the stereotypical reasoning employed by the State's attorney in exercising a peremptory strike.

" 'While we realize that it may be unrealistic to expect [trial] counsel to put aside every improper influence when selecting a juror, we conclude that that is exactly what the law requires.' *Speaker v. State*, 740 SW2d 486, 489 (Tex. App. 1987). 'Even though [the State's attorney] may have given [other] racially neutral explanation[s], the [trial court's finding of one] racially motivated explanation "vitiates

the legitimacy of the entire (jury selection) procedure." (Cits.)' *Moore v. State*, 811 SW2d 197, 200 (Tex. App. 1991). See also *State v. Tomlin*, 384 SE2d 707, 710 (S.C. 1989); *McKinney v. State*, 761 SW2d 549, 551 (Tex. App. 1988). . . . We must therefore reverse [the case sub judice for a new trial].' *Gamble v. State*, [257 Ga. 325, 330 (7), supra]. See also *Randolph v. State*, [203 Ga. App. 115, 117 (3) (416 SE2d 117)]." *Strozier v. Clark*, 206 Ga. App. 85, 87 (5), 88 (424 SE2d 368).

3. We have considered defendant's remaining three enumerations and find that they either lack merit or are unlikely to recur upon retrial.

*Judgment reversed. Pope, C. J., and Smith, J., concur.*

DECIDED JUNE 6, 1994.

*Ronald B. Hatcher*, for appellant.

*Lewis R. Slaton, District Attorney, Leonora Grant, Barry I. Mortge, Assistant District Attorneys*, for appellee.