## A96A2307. WATTS v. THE STATE.
(477 SE2d 852)

ELDRIDGE, Judge.

A confidential informant identified, for the narcotics agents of the Atlanta Bureau of Police Services, 51 Montgomery Street N.E., Atlanta, DeKalb County, as a crack house. Narcotics officer S. J. Chambers had the informant make a controlled buy from the house with city funds. The sale was made by Bennie, a dark complected, medium sized, African-American male on March 8, 1994. Chambers had the informant identify appellant, Bennie Watts, from a group of photographs and then showed the photograph of appellant to officers surveilling or taking part in the later search of the house at 51 Montgomery Street. Between March 8 and March 23, Chambers and her partner kept the house under surveillance and observed a high volume of different people enter the house and leave after two to five minutes, which conduct was consistent with their experience with crack houses. On March 23, Chambers and the informant went to 51 Montgomery Street to make another drug buy; a different African-American male, Walt (later identified as Walter Stephens), sold them the crack cocaine. Chambers obtained a "no knock" search warrant on March 24, which was served on March 25. Chambers briefed the officers with the photograph of appellant and told them to watch for him during the search.

The police found Ira Charles Dotsun on the front porch of 51 Montgomery Street and took him into custody. He gave an address elsewhere as his residence.

After breaking the lock, Chambers and the other officers stormed into the house. Chambers observed Donnell Stephens and Keith Williams run from the direction of the right rear bedroom, across the hall to the left rear bedroom, where they were arrested. Keith Williams gave a residence address elsewhere. Donnell Stephens gave as his address 4243 Scottie Drive.

Walter Stephens and Darnell Watts, appellant's nephew, were found in the right front bedroom. Both men gave 51 Montgomery Street as their residence.

After entry, Chambers rushed down the hall to the closed door of the right rear bedroom and kicked in the door. She found appellant in a crouched position, as if rising from a kneeling position, next to the window and over an open vent in the floor; the vent cover had been removed, and she found a large quantity of crack cocaine hidden in the hole in the floor. Appellant was the only person in the room, and she had not seen the door open or close when she saw Stephens and Watts run from that direction. When searched, appellant had $390 on his person. No one else in the crack house had any money, and no money was found stashed in the crack house except on appellant.

Pistols and shotguns were found in almost every room in the house. A Beretta was found in a chest of drawers next to the door inside the right rear bedroom, and an Ithaca Excel 900 shotgun was also found in the room, as well as several beepers and a Topper 158 shotgun. A Remington 16 gauge shotgun was found in the left front bedroom along with a Rossi .38. An Arimus .38, an S & W .38, and a .357 magnum were found in the right front bedroom.

After arrest, appellant told the officers that he lived at 51 Montgomery Street and had a Georgia driver's license, which had as his address 51 Montgomery Street, Atlanta, Georgia.

The 51 Montgomery Street house was in a very run down condition, and the water had been turned off since October 1992.

Appellant was indicted on May 23, 1995 for trafficking in cocaine, possession of cocaine with the intent to distribute, and possession of firearms by a convicted felon.

The public defender's office was appointed to defend appellant at trial and during pretrial proceedings. Upon motion of the defense, the drug charges were bifurcated from the weapons charges. The jury returned a verdict of guilty on both drug charges on November 14, 1995. Appellant was found not guilty on the weapons charges on the same date. On November 29, 1995, appellant was sentenced to 15 years to serve on the trafficking charge, with the other drug charge merging. On December 20, 1995, a general motion for new trial was filed, and on February 7, 1996, the motion for new trial was amended to raise the issue of ineffective assistance of counsel.

An evidentiary hearing on the issue of ineffective assistance of

counsel was held on May 8, 1996.

Appellant testified that he was seen at the jail by Ms. Levy only once and by Ms. Peterson twice prior to trial for 15 to 30 minutes each time. Ms. Levy contradicted this testimony by stating that she had seen appellant at the jail twice and that she and Ms. Peterson had seen appellant numerous times in court when he had been brought over for calendar calls before his case reached trial. Appellant contended that counsel failed to call the defense witnesses that he gave them to show that his residence was not 51 Montgomery Street. Ms. Levy testified that they talked to the defense witnesses and that one witness did not know where appellant lived and that Donnell Stephens told their investigator that appellant was a drug dealer that used 51 Montgomery Street as a drug house for sales. Their investigation showed that the house was run down and had no water since October 1992.

The defense strategy had been not to focus on the place of residence of appellant, because 51 Montgomery Street was obviously a drug house, but to defend on equal access to the drugs. This strategy was premised upon there having been five men arrested inside the house and one on the front porch; two occupants were observed running from the room with the drugs; "Walt" had sold the drugs on March 23 to Chambers; the confidential informant did not testify at trial as to the sale by "Bennie" on March 8 and did not identify appellant at trial as the seller; and there was nothing to tie appellant to the drugs except presence at the scene of the crime. The defense team did not attempt to interview Chambers; however, they interviewed all possible defense witnesses as to equal access. Ms. Levy testified that they had prepared to cross-examine the prosecution's witnesses; they had made a thorough investigation; and they had talked to all witnesses named by appellant. Defense counsel explained the defense and the case to appellant, advised appellant in regard to a plea bargain made by the district attorney, and advised appellant regarding his right to testify, as well as to the risk of his being placed under oath. Beginning August 31, 1995, defense counsel served motions for discovery, *Brady* material, and a list of witnesses, as well as motions to reveal the identity of the confidential informant and to bifurcate the trial. The prosecution gave the defense an open file discovery. The defense submitted 19 requests to charge and did a vigorous cross-examination of the prosecution witnesses to show equal access to the drugs as well as presented two witnesses as to where appellant lived. The record demonstrates that the jury selection, opening statement, and closing argument were professionally done.

On May 8, 1996, after the evidentiary hearing, the trial court denied appellant's motion for new trial. Appellant filed a timely appeal on June 6, 1996.

1. The first enumeration of error is that the trial court erred in denying the motion for new trial on the grounds of ineffective assistance of counsel.

After a careful examination of the record, we find that appellant has failed to carry the burden of proof as to the issue of ineffective assistance of counsel in the case sub judice. The defense counsel made an informed decision not to focus on the issue of appellant's proper residence, although they did put up two defense witnesses to show that 51 Montgomery Street was not his residence. Any more attention devoted to this issue would focus the jury's attention on why appellant would show on his driver's license the address of an obvious crack house, which had not had water for nearly two years and where two other defendants claimed residence, including his nephew. This would also focus attention on the fact that at the time of arrest, appellant gave 51 Montgomery Street as his residence and for what reason he may have done so: to possibly avoid a search of his actual residence. Defense counsel did not waste their time attempting to interview the arresting narcotics officer, who would know that she could refuse to talk to them and probably would have refused. The defense strategy was to focus on the fact that there had been six men on the premises at the time of the search, and one of them had made a direct hand-to-hand sale to Chambers on March 23; such equal access raised legitimate questions of law and fact for the jury.

The Supreme Court held in *Lakes v. State*, 266 Ga. 389 (467 SE2d 566) (1996), "To establish a claim of ineffective assistance at trial requiring reversal of a conviction, a criminal defendant must show that counsel's performance was deficient and that the deficient performance prejudiced the defense. Judicial review of counsel's performance should be highly deferential with substantial latitude given trial counsel in deciding trial strategy." See *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984); *Stewart v. State*, 262 Ga. 894, 895 (2) (426 SE2d 367) (1993); *Moody v. State*, 206 Ga. App. 387, 388 (425 SE2d 397) (1992).

"[T]he defendant must overcome the strong presumption that counsel's conduct falls within the broad range of reasonable professional conduct." (Citations and punctuation omitted.) *Taylor v. State*, 203 Ga. App. 210, 211 (3) (416 SE2d 554) (1992); see also *Davis v. State*, 209 Ga. App. 755 (1) (434 SE2d 752) (1993).

The Supreme Court has held that "given all the circumstances, the defendant's counsel's choice was tactical and considered, and that this strategy was not so clearly erroneous as to be ineffective." *Stewart v. State*, supra.

"To justify a reversal for ineffective assistance of counsel, appellants must show: (1) counsel's performance was not reasonably effective, and (2) that the outcome of the trial would have been different

but for counsel's unprofessional efforts. *Brogdon v. State*, 255 Ga. 64, 67 (335 SE2d 383) (1985)." *Wiltshire v. State,* 191 Ga. App. 426, 427 (382 SE2d 166) (1989). See also *Williams v. State*, 200 Ga. App. 187 (408 SE2d 512) (1991).

"The trial court's determination that an accused has not been denied effective assistance of counsel will be affirmed on appeal unless that determination is clearly erroneous. [Cit.]" *Johnson v. State*, 214 Ga. App. 77, 78 (1) (447 SE2d 74) (1994); see also *Adefenwa v. State*, 221 Ga. App. 429 (471 SE2d 900) (1996).

The trial court did not err in finding that defense counsel effectively represented appellant.

2. The second enumeration of error is that there was insufficient evidence to support a conviction and that the trial court erred in denying the motion for new trial on such ground.

The appellant had been identified by the confidential informant both by name and by picture as an occupant of 51 Montgomery Street involved in the sale of drugs. At trial, Chambers testified that she had circulated appellant's photograph among the raiding officers for that reason. Chambers testified that she and the confidential informant made a drug buy on March 23 from "Walt," later identified as Walter Stephens, a resident by his own admission. Appellant was arrested in a closed room, alone, getting up from a large stash of drugs hidden in a floor vent hole; the vent cover was lying at his feet; the only money in the crack house was the $390 found on appellant; appellant was also found in the room with several beepers, as well as a Beretta and a shotgun; although the house was rundown and had not had water for nearly two years, appellant still had the address listed as his residence on his driver's license, although he had lived elsewhere for sufficient time that the driver's license should have been renewed and corrected as to any former address; and he told the arresting officers that was his residence. Such evidence was sufficient to authorize a rational trier of fact to conclude that appellant was guilty beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); see also *Scott v. State*, 216 Ga. App. 692, 693 (1) (455 SE2d 609) (1995); *Patterson v. State*, 181 Ga. App. 68, 69 (2) (351 SE2d 503) (1986).

This Court held in *Funderburk v. State*, 221 Ga. App. 438, 439 (471 SE2d 535) (1996), "The evidence is viewed with all reasonable inferences made, and all issues of weight and credibility resolved, in favor of the verdict."

The trial court did not err in denying the motion for new trial on such grounds.

3. Appellant's final enumeration of error is that the trial court erred in failing to grant him a mistrial when Chambers, in recounting the charges against each of the six men arrested at 51 Montgom-

ery Street, stated that appellant had been arrested on the drug charges, as well as possession of a firearm by a convicted felon.

The Supreme Court stated in *Head v. State*, 253 Ga. 429, 431-432 (3) (322 SE2d 228) (1984), that it was the better practice to bifurcate the charge of possession of a firearm by a convicted felon from other unrelated charges to avoid prejudice; however, if the charges were interrelated, such as felony murder and the possession by a convicted felon was the underlying felony, then such charges could be tried together, although it did put his character in evidence. See also *Jones v. State*, 265 Ga. 138 (454 SE2d 482) (1995); *Kellam v. State*, 260 Ga. 464, 465 (396 SE2d 894) (1990); *Barnett v. State*, 215 Ga. App. 46, 47 (449 SE2d 651) (1994); *Waddell v. State*, 190 Ga. App. 499, 500 (379 SE2d 592) (1989); *Evans v. State*, 186 Ga. App. 37 (366 SE2d 325) (1988). The trial court did bifurcate the trial on these offenses for such reason and sought to keep the jury ignorant of the convicted felony status of appellant, until such issue was relevant and material, so as not to prejudice the appellant, but the arresting officer revealed such information innocently.

The trial court sent the jury out to hear such motion and then instructed the jury to disregard such statement, because appellant was not charged as a convicted felon, which removed such possible prejudice caused, if they believed that appellant was, in fact, a convicted felon. The curative instruction was adequate to avoid harm to appellant and to avoid any prejudice to appellant.

This Court held in *Bryant v. State*, 210 Ga. App. 222, 224 (435 SE2d 741) (1993), " 'The trial court's ruling will not be disturbed on appeal absent an abuse of discretion, which does not exist if the curative instructions given can serve to prevent the alleged harmful testimony from having any prejudicial impact. . . .' (Citations and punctuation omitted.) *Crawford v. State*, 256 Ga. 585, 587 (351 SE2d 199) (1987)."

The Supreme Court held in *Stanley v. State*, 250 Ga. 3, 4 (2) (295 SE2d 315) (1982), that "[w]hen prejudicial matter is placed before the jury in a criminal case, the trial judge must decide whether a mistrial must be granted as the only corrective measure or whether the prejudicial effect can be corrected by withdrawing the testimony from the consideration of the jury under proper instructions."

"The granting or denial of a mistrial is within the sound discretion of the trial court, and we will not disturb his ruling in the absence of abuse of that discretion." *Griggs v. State*, 181 Ga. App. 618 (353 SE2d 97) (1987). See also *Anderson v. State*, 183 Ga. App. 669, 672 (359 SE2d 688) (1987); *Tyler v. State*, 198 Ga. App. 685, 687 (1) (402 SE2d 780) (1991); *Hall v. State*, 177 Ga. App. 464 (339 SE2d 658) (1986).

The trial court did not abuse his discretion in denying the motion

for mistrial and in the giving of the curative instruction.

*Judgment affirmed. Beasley, C. J., and Blackburn, J., concur.*

DECIDED OCTOBER 21, 1996 —
RECONSIDERATION DENIED OCTOBER 31, 1996.

*Elliott A. Shoenthal*, for appellant.

Bennie Watts, *pro se.*

*J. Tom Morgan, District Attorney, Robert M. Coker, Elisabeth G. Macnamara, Assistant District Attorneys*, for appellee.