## A99A0177. KNUCKLES v. THE STATE.
### (512 SE2d 333)

ELDRIDGE, Judge.

In July 1997, blank checks were stolen from Joe Threlkeld. On July 17, 1997, Hubert Grogan, a clerk at the Circle M store called Threlkeld and told him that Melvin Knuckles was attempting to pass check no. 142 and asked if the check was good. When he learned that the check was stolen, the clerk called the police. Also, clerks at Citizen's Pharmacy, who knew Threlkeld, caught Knuckles passing another check of Threlkeld's payable to and endorsed by "Randy Brown."

On December 30, 1997, Melvin Lamar Knuckles was charged by accusation with three first degree forgery counts and one misdemeanor theft by taking count.

After trial, the defendant was convicted on two counts of first degree forgery. Defendant timely appeals.

1. Defendant's first enumeration of error is that the trial court erred in finding that, after a *Batson*[1] challenge and the district attorney's race-neutral reasons, the trial court accepted the allegedly pretextual reason for striking juror no. 112, Rosa Bailey and did not replace her on the jury.

Voir dire was taken down. There were six African-Americans on the jury, one of whom was excused for cause. The State used two peremptory strikes to remove two of them. The defense made a *Batson* challenge. While denying a prima facie case had been made, because only two of six strikes used were against African-Americans, the district attorney went forward to give his race-neutral reasons for the

---

[1] *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986).

use of the two peremptory strikes.

The first juror was no. 94, Mr. Mays. The second juror was no. 112, Rosa Bailey. Both jurors had served on a jury the previous day that returned a defendant's verdict of not guilty.

The district attorney gave the following race-neutral explanations. "The reason why the state struck Mr. Mays was because he was on the jury yesterday that found the defendant not guilty . . . and the reason why the state struck Ms. Bailey was also because she was on the jury that found the defendant not guilty yesterday as well as we noticed that she had a nose ring."[2]

The defense then argued that the reason of prior jury service was pretextual, because there were white jurors from the former trial that were on the defendant's jury who had not been struck.

The district attorney responded that the State had insufficient strikes to remove all jurors that had voted to acquit on the previous case; however, all strikes except one were used on such jurors. The one exception was a juror struck by the prosecutor because his brother-in-law had a forgery conviction.

The hearing was continued over the luncheon recess so that counsel could do research, and the trial court allowed extensive argument prior to ruling. After lunch, the defense raised the issue of an Hispanic juror, Mr. Acosta, who had also been excluded for the same reasons by a peremptory strike.

The trial court found that the State engaged in a purposeful pattern of discrimination in disparate striking of the minorities for that reason, while retaining some white jurors subject to the same reason. For this reason, the trial court replaced Mays and Acosta.

While the trial court found that a prior acquittal by these jurors was a legitimate race-neutral reason, the State had excluded the minority jurors prior to the white jurors in the same situation so that the "defendant has carried its burden of proving purposeful discrimination." However, the trial court found that the peremptory strike of Bailey for the nose ring was not purposeful discrimination.

(a) The defense raised a *Batson* challenge which the trial court partially overruled. The trial court initially found that the State's explanation was race-neutral, i.e., jurors were excluded who had acquitted in a trial the previous day.[3] However, the trial court found that the State used such reason to exclude similarly situated African-

---

[2] The prosecutor also stated that "I did not feel comfortable with someone who had a nose ring sitting on the jury. There are people of all different skin colors that wear nose rings. I've seen lots of white people wearing nose rings. I don't feel comfortable with that."

[3] This Court previously has held that such reason was race-neutral. See *Richard v. State*, 223 Ga. App. 98, 99 (476 SE2d 849) (1996); *Aldridge v. State*, 222 Ga. App. 437 (475 SE2d 195) (1996); *Jackson v. State*, 220 Ga. App. 98 (469 SE2d 264) (1996).

Americans prior to excluding whites. Although two whites also were excluded for such reason, in the exercise of discretion, the trial court found that the State had demonstrated a pattern of discrimination by the order in which similarly situated jurors were excluded, i.e., three minority jurors were excluded, but only two whites for the same reason, and one white was left on the jury who had also been on the prior jury.

On appeal, the defendant urges that, if the trial court finds as to an excluded juror a racially motivated explanation, this vitiates any legitimate race-neutral explanation as to such juror. We do not agree.

Defendant's argument would be correct if the explanation was clearly racially motivated *on its face*. See *Lingo v. State*, 263 Ga. 664, 668 (1) (c) (437 SE2d 463) (1993). In *Lingo*, the Court held "[t]he dissent correctly cites *Strozier v. Clark*, 206 Ga. App. 85, 88 (424 SE2d 368) (1992), a recent Court of Appeals case, for the rule that where racially-neutral and neutrally-applied reasons are given for a strike, the simultaneous existence of any racially motivated explanation results in a *Batson* violation." Id. In *Strozier*, the second reason given was *facially* and impermissibly racially motivated, which pervaded the exercise of the strike, no matter what other reasons were given. "An assumption [without voir dire support] that the prospective juror in the instant case would likewise act 'along racial lines' and engage in 'misconduct' would constitute 'an impermissible assumption ultimately arising solely from the juror's race.' [Cit.]" *Strozier*, supra at 88. *Lingo* also held that no presumption arises "that *any* reason for striking a black juror, not also used against a white juror — regardless of other reasons for striking a black juror — is, per se racially motivated. This is not what *Batson* or *Strozier* hold, or even imply. Rather, there is a *Batson* violation only where the prosecutor's explanation is determined to be racially motivated. Where there are multiple reasons for striking a juror, white or black, it *cannot* be *presumed* that a reason applied to one juror, of one race, but not applied to another juror, of another race, is racially motivated." (Footnote omitted; emphasis in original.) *Lingo*, supra at 668-669 (1) (c).

In this case, the explanation regarding jury acquittal was facially race-neutral. But the trial court, in the exercise of discretion, chose to find purposeful discrimination in the State's disparate treatment. However, the same trial judge found that the second reason was also racially neutral. Therefore, factually and legally, this case is placed outside *Strozier*, and the trial court's determination was not negated by the finding as to the first explanation.

(b) Further, *Lingo* and *Strozier* were rendered prior to *Purkett v. Elem*, 514 U. S. 765 (115 SC 1769, 131 LE2d 834) (1995), which made clear that appellate courts should not substitute their belief as to reasonableness of the explanation for the trial court's determination,

because the trial court sits as finder of fact with all the facts and circumstances before it. See also *Hernandez v. New York*, 500 U. S. 352, 358-359 (111 SC 1859, 114 LE2d 395) (1991). Thus, appellate courts must give great deference to the trial court's determination. *Purkett*, supra; *Gamble v. State*, 257 Ga. 325, 326 (357 SE2d 792) (1987). Although this Court may have upheld the explanation that the previous day's acquittals was racially neutral, under *Purkett* the trial court's exercise of discretion was not wrong. While no explicit racial reason for the strikes was present in this case, and the reason was legitimately racially neutral, the priority in which the reason was applied was found to exclude minorities more than whites. "A prosecutor's failure to explain the apparently disparate treatment of similarly situated white and black jurors certainly diminishes the force of [the] explanation for striking a black juror." *Ford v. State*, 262 Ga. 558, 559-560, n. 1 (423 SE2d 245) (1992); accord *Freeman v. State*, 268 Ga. 181, 182 (1) (486 SE2d 161) (1997).[4]

Yet, where the prima facie case is not strong, and there are minorities on the jury, the reasons given do not have to be as strong, as in this case, for the trial court to accept the reasons as racially neutral. See *State v. Mallory*, 261 Ga. 625, 634 (409 SE2d 839) (1991) (Benham, J., concurring). "A court may be less troubled by one relatively weak explanation for striking a black juror when all the remaining explanations are persuasive. . . . Because the prosecutor's reasons for striking the prospective jurors were racially neutral, related to the case to be tried, and presented clear and specific reasons for exercising the challenges, the trial court did not err in denying the *Batson* challenge." (Citations and punctuation omitted.) *Berry v. State*, 263 Ga. 493, 494-495 (435 SE2d 433) (1993).

In light of *Purkett*, the trial court determined, after having the opportunity to observe the prospective juror, that wearing a nose ring was a legitimate racially neutral reason for the use of a peremptory strike by the district attorney. Such unusual way to wear jewelry, as well as other unconventional methods of self-adornment in attire, hair style, hair color, shaving the head, jewelry, tattoos, or scarification, may indicate youthful rebellion against authority and convention, or anti-social attitudes, or identification that would extend across gender and racial lines. Such may constitute a race/

---

[4] Thus, the exclusion of minorities over whites for the same reason was three to two, with one white accepted despite the same reason. Had this white juror also been excluded, rather than the juror with the brother-in-law with a forgery conviction, then an equal number of whites and minorities would have been excluded, so there would have been no apparent disparate treatment. Even if there had been only three minorities in the panel and all were stricken with an equal number of whites for the same race-neutral reason, then there would be no basis for an allegation of pre-textual use of strikes for racial discrimination where all were struck serially.

gender-neutral reason to strike. However, if such matters were shown to be *unique* to a racial or gender identification, then it could constitute an impermissible explanation. However, such exclusive identification with race or gender would be part of the movant's ultimate burden of persuasion. *Berry v. State*, 267 Ga. 605, 608 (5) (481 SE2d 203) (1997).

When the reasons articulated for the challenged exercise of peremptory strikes are concrete, tangible, and non-racial, the trial court does not abuse its discretion in denying the challenge, even where the explanation is not persuasive or even plausible, where the trial court is persuaded that the explanation does not deny equal protection. See *Crowder v. State*, 268 Ga. 517, 519 (4) (491 SE2d 323) (1997); *Freeman v. State*, supra at 182; *Russell v. State*, 267 Ga. 865, 867 (2) (485 SE2d 717) (1997); *Berry v. State*, 267 Ga. 605, 608, supra; *Barber v. State*, 267 Ga. 521, 522 (3) (481 SE2d 813) (1997). "[W]e cannot conclude that that finding was clearly erroneous." Id.; see also *Trammel v. Cameron*, 265 Ga. 156, 157-158 (454 SE2d 501) (1995).

2. The defendant's second enumeration of error is that the trial court erred in failing to declare a mistrial after the State, in closing argument, commented that the defendant's failure to speak to police was evidence of his intent to defraud.

Defendant testified in his own defense that he possessed and presented the checks without knowledge that they were forged. When the Circle M clerk called Threlkeld, the defendant tore up the check, left the store, and went home. When he got home, a police officer arrived looking for him, and he spoke to the officer and went inside to put his beer in the refrigerator. When he came outside, the policeman was gone. A neighbor told him that the police had been looking for him at a different residence.

In closing argument, the State said, "[w]hat else do we have? Well, he avoided Deputy Rainer who wanted to talk to him." The defense moved for mistrial on the grounds that it was prejudicial and gave rise to an inference that he intended to avoid the officer as part of the fraud and that he had no duty to speak; the trial court denied the motion. The trial court gave a curative instruction as follows: "[m]embers of the jury, the last statement that was made by the prosecution should be disregarded by you. The law is that no person has a duty or obligation to respond to a police officer unless specifically requested to stop or are [sic] under arrest." The defendant renewed his motion for mistrial.

"The trial court's ruling will not be disturbed on appeal absent an abuse of discretion, which does not exist if the curative instructions given can serve to prevent the alleged harmful [argument] from having any prejudicial impact." *Crawford v. State*, 256 Ga. 585, 587 (2) (351 SE2d 199) (1987). "The granting of a motion for mistrial is

within the discretion of the trial court, and the trial court's ruling will not be disturbed on appeal unless a mistrial is required to preserve [defendant's] right to a fair trial. [Cit.] Absent evidence to the contrary, we find the remedial measures taken by the trial court were sufficient to ensure that [the defendant] received a fair trial, and the trial court did not abuse its discretion in denying [defendant's] motion." *Jones v. State*, 267 Ga. 592, 594-595 (1) (b) (481 SE2d 821) (1997). "The curative instruction was adequate to avoid harm to [defendant] and to avoid any prejudice to [defendant]." *Watts v. State*, 223 Ga. App. 412, 417 (3) (477 SE2d 852) (1996).

*Judgment affirmed. Pope, P. J., and Smith, J., concur.*

Decided February 12, 1999.

*Summer & Summer, Elizabeth B. Reisman*, for appellant.
*Lydia J. Sartain, District Attorney, Jennifer C. Bagwell, Assistant District Attorney*, for appellee.