SELF, Judge,
dissenting.
I join fully with Judge Ray’s dissent and his view that our previous decision in Rector v. State, 213 Ga. App. 450 (444 SE2d 862) *205 (1994) can be distinguished based upon the procedural posture of the case on appeal and its facts. I write separately to point out that our decision in Rector has been disapproved by the Supreme Court of Georgia in Toomer v. State, 292 Ga. 49 (734 SE2d 333) (2012) and was decided before a seminal United States Supreme Court decision clarifying step two of the Batson v. Kentucky[33] analysis. Purkett v. Elem, 514 U. S. 765 (115 SCt 1769, 131 LE2d 834) (1995). Because Rector has such limited precedential value, I cannot agree with the majority’s decision to so heavily rely upon it in reversing the trial court.
At the time Rector was decided in 1994, the Supreme Court of Georgia required the proponent of a strike to state a “racially neutral, case-related, explanation of the exercise of the challenged strikes” in step two of the Batson analysis. (Emphasis supplied.) Congdon v. State, 262 Ga. 683, 684 (424 SE2d 630) (1993). Following the United States Supreme Court’s decision in Purkett, however, the Supreme Court of Georgia disapproved statements “in some of our older cases suggesting that at Batson step two, the proponent of the challenged strike can carry his burden of production only by offering an explanation that is ‘case-related’ and ‘specific’ in addition to being race-neutral.” Toomer, supra, 292 Ga. at 54 (2) (b). Instead, our Supreme Court clarified:
At step two, the proponent of the strike need only articulate a facially race-neutral reason for the strike. Step two does not demand an explanation that is persuasive, or even plausible. At this second step of the inquiry, the issue is the facial validity of the prosecutor’s explanation. Unless a discriminatory intent is inherent in the prosecutor’s explanation, the reason offered will be deemed race neutral.
(Citations and punctuation omitted; emphasis supplied.) Id.
Keeping in mind the state of the law at the time Rector was decided, an examination of our holding in that case reveals that it turned upon the prosecutor’s failure “to explain how the prospective juror’s gold tooth related in any way to the outcome of the case sub judice and the trial court ruled that she would not accept that explanation in and of itself.” (Punctuation omitted; emphasis supplied.) Rector, 213 Ga. App. at 454 (2). We found “no abuse of discretion in this ruling.” Id. Based upon the State’s failure to make any case-related showing in connection with its gold-tooth explanation for the *206 strike, the trial court’s decision not to accept it “in and of itself” was consistent with then-existing law. Given the State’s failure to proffer a case-related reason for its strike, our conclusion that the trial court had not abused its discretion in so holding was also consistent with the law in effect at that time.[34]
We nonetheless reversed the trial court in Rector, because it “erred in ruling that other purportedly race neutral explanations cured the element of the stereotypical reasoning employed by the State’s attorney in exercising a peremptory strike.” Rector, supra, 213 Ga. App. at 454 (2). Our shorthand reference of “stereotypical reasoning” to our previous analysis of step two should not, however, be interpreted asa holding that a gold tooth equates with a stereotypical belief as a matter of law. See George v. State, 263 Ga. App. 541, 545 (2) (b) n. 13 (588 SE2d 312) (2003) (summarizing our holding in Rector as “improper stereotyping where state failed to explain how prospective juror’s gold tooth related to case”), disapproved on other grounds, Littlejohn v. State, 320 Ga. App. 197, 202 (1) (c) n. 3 (739 SE2d 682) (2013) (noting that George is overruled to the extent it was based upon standard disapproved in Toomer, supra). Clearly, our decision in Rector rested upon the State’s failure to provide a case-related explanation for its peremptory strike. But the Supreme Court of Georgia has now expressly disapproved of that portion[35] of the decision. Toomer, supra, 292 Ga. at 54 (2) (b) (holding “explanation need not even be ‘case-related’ ” and stating “[a]ny statements to the contrary in [four identified cases] and any other Georgia case are hereby disapproved”) (footnote omitted; emphasis supplied).
After the Supreme Court’s decision in Purkett, supra, “facial neutrality became paramount.” (Emphasis supplied.) Page, “Batson’s Blind-Spot: Unconscious Stereotyping and the Peremptory Challenge,” 85 Boston Univ. L. Rev. 155,167 (I) (C) (2) (2005). But nowhere in Rector did we consider, much less definitively decide, whether striking an African-American juror based upon gold teeth is facially race-neutral. Instead, we straightforwardly applied the law in effect *207 at the time of our decision. With regard to step two, we summarized the State’s obligation as follows: “ ‘In order for the State to carry its Batson burden, the prosecutor (must) explain his striking of the jurors at issue by articulating a racially-neutral reason related to the particular case.’ [Cit.]” (Citation omitted; emphasis supplied.) 213 Ga. App. at 451 (2). This standard intertwined case-relatedness with racially-neutral reasons for a strike and made no mention of facial neutrality Based upon the law at the time Rector was decided and the particular language used in our decision to explain both the legal standard and our holding, we simply cannot disentangle any statements about “stereotypical reasoning” in that case from portions of the analysis resting upon prior law. And this loose and inartful language should certainly not be equated with a ruling on whether a gold tooth constitutes a facially race-neutral explanation for a peremptory jury strike.
Notwithstanding Rector’s limited precedential value, the majority relies upon this disapproved case to stake out its position and hold for the first time that any party who strikes an African-American juror because he or she has gold teeth can never provide a race-neutral explanation and will always fail the second step of the Batson analysis. According to the majority, the State’s explanation was not facially race-neutral because “having a full mouth of gold teeth is a cultural proxy stereotypically associated with African-Americans” as a matter of law. Maj. op., p. 198. I respectfully disagree.
The standard for step two of the Batson analysis is not whether an explanation “is a cultural proxy stereotypically associated with [a race].” Instead, “the issue is the facial validity of the prosecutor’s explanation. Unless a discriminatory in ten t is inheren t in the prosecutor’s explanation, the reason offered will be deemed race neutral.”[36] (Citation and punctuation omitted; emphasis supplied.) Toomer, supra, 292 Ga. at 54 (2) (b). In Purkett, the United States Supreme Court examined this question and concluded that the growing of long, unkempt hair “is not a characteristic that is peculiar to any race.” (Punctuation omitted.) 514 U. S. at 769. And in Hernandez v. New York, it explained that a “neutral explanation . . . means an explanation based on something other than the race of the juror.” 500 U. S. 352, 360 (II) (B) (111 SCt 1859, 114 LE2d 395) (1991) (plurality *208 opinion). See also Willis v. State, 287 Ga. 703, 708 (6) (699 SE2d 1) (2010) (finding “State’s tendered reasons were ‘based on something other than the race of the juror’ and, thus, were facially race-neutral,” citing Hernandez, supra). After Purkett, our courts began analyzing the explanation offered at step two of the Batson analysis to determine whether a proffered reason was “based on a stereotypical belief or a characteristic peculiar to any race.” Barnes v. State, 269 Ga. 345, 350 (6) (496 SE2d 674) (1998). See also Wheeler v. State, 249 Ga.App. 116, 117 (1) (547 SE2d 746) (2001) (explanationfor strike is “notrace-neutral if it is based on a characteristic peculiar to any race or on a stereotypical belief”). As we explained in Knuckles v. State:
[Ujnusual way[s] to wear jewelry, as well as other unconventional methods of self-adornment in attire, hair style, hair color, shaving the head, jewelry, tattoos, or scarification, may indicate youthful rebellion against authority and convention, or anti-social attitudes, or identification that would extend across gender and racial lines. Such may constitute a race/gender-neutral reason to strike. However, if such matters were shown to be unique to a racial or gender identification, then it could constitute an impermissible explanation. However, such exclusive identification with race or gender would be part of the movant’s ultimate burden of persuasion.
(Emphasis in original.) 236 Ga. App. 449, 452-453 (1) (b) (512 SE2d 333) (1999).
In Wooten v. Castro, the Ninth Circuit Court of Appeals addressed a similar issue and resolved it as follows:
The prosecutor’s second explanation was [the juror]’s appearance. The California Court of Appeal[s] adopted the trial court’s finding that this reason was race-neutral. Nonetheless, as noted by the district court, certain parts of the description of [the juror]’s appearance could arguably be seen as “proxies” for describing young African-American males. The description of [the juror]’s appearance, however, is not “peculiar” to his race. Purkett v. Elem, 514 U. S. 765, 769 (115 SCt 1769, 131 LE2d 834) (1995) (per curiam) (finding race-neutral an explanation that African-American juror was struck because he had long, curly, unkempt hair, a mustache, and beard) .... Thus, while the appearance-related criteria used by the prosecutor to strike [the juror] may disproportionately apply to young, African-American *209 males, it is race-neutral because it is not unique to this group. See Purkett, 514 U. S. at 769.
(Citation omitted.) 130 Fed. Appx. 106, 107-108 (9th Cir. 2005), cert. denied, 546 U. S. 868 (2005). Other jurisdictions have also concluded that the exercise of peremptory strikes based upon grooming and appearance choices that might be associated with one race more than another do not violate Batson. Lacey v. Kramer, Case No. 2:07-cv-02640-VAP (HC), 2010 U. S. Dist. LEXIS 46603 at **4-7 (I) (A) (2), 15-19 (III) (B) (E.D. Cal. 2010) (dreadlocks); Fields v. State, Case No. 05-02-01665-CR, 2004 Tex. App. LEXIS 340 at *6-7 (Tex. Ct. App. 2004) (gold necklace and gold teeth). See also Brown v. Grounds, Case No. 12-cv-01714-WHO (PR), 2014 U. S. Dist. LEXIS 114795 at *26 (V) (N.D. Cal. 2014) (rejecting habeas claim after state appellate court found that membership in NAACP “not inherently connected to the race of the prospective juror”) (punctuation omitted); Richards v. Relentless, Inc., 341 F3d 35, 45 (II) (C) (1st Cir. 2003) (rejecting argument that city of residence was proxy for striking juror based on race and holding “[tjhis statistical fact alone cannot convert a facially race-neutral explanation into one based on race”). In light of these authorities, I would conclude that a juror’s gold teeth are not a characteristic peculiar to any race for purposes of step two of the Batson analysis.[37]
With regard to the “stereotypical belief” portion of the step two analysis, courts should examine whether the proffered explanation is based upon a stated stereotypical belief about a certain race or gender. “Belief” is defined as “something that is accepted, considered to be true, or held as an opinion.” Merriam-Webster’s Online Dictionary, https://www.merriam-webster.com/dictionary/belief (website last viewed March 28, 2017). In this case, the State’s explanation for the strike cited a race-neutral observable fact and did not express a belief or assumption about members of the juror’s race or even a subgroup of that race. See generally State v. Weaver, 912 SW2d 499, 509 (I) (Mo. 1995) (no Batson violation where prosecutor’s decision to strike was not based upon assumptions about members of the juror’s minority group). Compare State v. Jensen, 76 P3d 188, 193 (II) (Utah App. *210 2003) (explanation for strike not gender-neutral where prosecutor assumed that men involved in a protective order “would be on the defendant’s side, since more likely than not men are the respondents to protective orders, rather than women”) (punctuation omitted); State v. Lucas, 18 P3d 160, 162-163 (Ariz.App. 2001) (holding explanation that southern men take a negative view of pregnant women who work “wrongfully excludes a subgroup of one gender from participation in the judicial process and reinforces prejudicial views of the relative abilities of men and women”) (citation and punctuation omitted). I therefore disagree with the majority’s conclusion that the explanation in this case was not facially race-neutral because “having a full mouth of gold teeth is a cultural proxy stereotypically associated with African-Americans.” Maj. op., p. 198. The flaw in the majority’s logic is that it equates a facially race-neutral explanation that has a disparate impact upon one race with a stereotypical belief.[38] As outlined above, this is not the proper standard for step two of the Batson analysis.
This disparate impact, however, is relevant to step three of the Batson analysis. As we have already explained in Knuckles, supra, if a facially race or gender-neutral explanation has a disparate impact upon a race or gender “it could constitute an impermissible explanation.” 236 Ga. App. at 453 (1) (b). Convincing the court that the explanation is actually a proxy for race or gender “would be part of the movant’s ultimate burden of persuasion” in step three of the Batson analysis. Id. In step three, the trial court must
decide whether the opponent of the strike has proven the proponent’s discriminatory intent in light of all of the circumstances that bear upon the issue of racial animosity. This involves an evaluation of the credibility of the strike’s proponent, which in turn may depend on the specificity and case-relatedness of the explanation for the strike given at step two. The trial court may conclude that a vague explanation, or one that is in no way case-related, signals an unwillingness by the proponent to provide the real reason for the strike. And the proffer of a pretextual explanation naturally gives rise to an inference of discriminatory intent. *211 At the third stage, implausible or fantastic justifications may (and probably will) be found to be pretexts for purposeful discrimination.
(Citations and punctuation omitted.) Toomer, supra, 292 Ga. at 55 (2) (b).
In this case, the trial court found “that the Defendants did not prove discriminatory intent in the State’s striking of [the juror]. The State provided clear race neutral explanations for the strike.” And in the hearing following this Court’s remand, the trial court acknowledged that it understood that the defense was arguing that the State’s explanation for the strike was pretextual. “Atrial court’s findings on whether the opponent of the strike has met his burden of persuasion is entitled to great deference and will be affirmed unless clearly erroneous.” Barnes, supra, 269 Ga. at 349 (6).
A trial court’s determination of a Batson challenge rests largely on assessing the attorney’s credibility and state of mind and therefore lies peculiarly within the province of the trial judge. Accordingly, where, as here, [race]-neutral reasons are given, the ultimate inquiry for the trial court is not whether counsel’s reasons are suspect, or weak, or irrational, but whether counsel is telling the truth in his or her assertion that the challenge is not [race]-based.
(Punctuation and emphasis omitted.) Henderson v. State, 320 Ga. App. 553, 560 (5) (740 SE2d 280) (2013). In my view, the evidence before the trial court authorized it to conclude that the defendant failed to prove the prosecutor’s discriminatory intent.[39]
While I reach this conclusion based upon existing United States Supreme Court and Supreme Court of Georgia precedent,[40] like Judge Ray, I am “uneasy with the decision of the State to strike the prospective juror based, in part, on the fact that he had gold teeth.” Dissent, p. 201. And also like Judge Ray, I may have made a different, *212 finding in step three of the analysis with regard to discriminatory intent. But unlike the trial judge in this case, I did not witness the prosecutor’s demeanor as he explained his basis for the strike. “As with the state of mind of a juror, evaluation of the prosecutor’s state of mind based upon demeanor and credibility lies peculiarly within a trial judge’s province.” (Citation and punctuation omitted.) Taylor v. State, 279 Ga. 706, 708 (3) (620 SE2d 363) (2005). “To overturn the trial court’s determination in this case would constitute de novo appellate review of a ruling made at stage three,” contrary to the “precedents obliging this Court to accord great deference to the trial court’s findings and to affirm them unless they are clearly erroneous (Citation and punctuation omitted.) Allen v. State, 280 Ga. 678, 682 (2) (b) (631 SE2d 699) (2006). See also Goldberg, supra, 280 Ga. App. at 602 (de novo review oí Batson step two; abuse of discretion review of steps one and three). Given this clear and longstanding precedent, I cannot find that the trial court’s ruling was clearly erroneous. Consequently, I must vote to affirm the trial court.
Decided February 17, 2017
Reconsideration denied March 31, 2017.
Raina J. Nadler, for appellant (case no. A16A2147).
The Merchant Law Firm, Ashleigh B. Merchant, for appellant (case no. A16A2148).
D. Victor Reynolds, District Attorney, Amelia G. Pray, Jason D. Marbutt, Assistant District Attorneys, for appellee.

 4 76 U. S. 79 (106 SCt 1712, 90 LE2d 69) (1986).

 While the abuse of discretion standard of review was correct based upon the State’s failure to offer the case-related reason for the strike, I note that this standard of review is no longer viable for step two of the Batson analysis. As we explained in a case decided after Purkett, “if a trial court ceases its inquiry after step two, the proffering of allegedly race-neutral reasons, its conclusions are entitled to no deference .... [O]ur revie w of rulings at stage two is analogous to our rulings on motions for summary judgment or to our former rulings on demurrers in common law.” (Citation and punctuation omitted.) Goldberg v. State, 280 Ga. App. 600, 602 (1) (634 SE2d 419) (2006).

 Our conclusion in Rector that other race-neutral explanations for a peremptory strike do not cure an improper explanation at step two of the Batson analysis remains valid. 213 Ga. App. at 454 (2).

 In considering this question under Batson, the Supreme Court of Georgia has rejected an argument that Georgia should apply “the Georgia Constitution’s equal protection guarantee differently than the equal protection clause in the Fourteenth Amendment to the United States Constitution. . . .” Toomer, supra, 292 Ga. at 54 (2) (b) n. 3. See Batson, supra, 476 U. S. at 86 (II) (A) (“The Equal Protection Clause guarantees the defendant that the State will not exclude members of his race from the jury venire on account of race.”).

 The reasoning of the South Carolina Supreme Court’s decision in Payton v. Kearse, 495 SE2d 205 (S.C. 1998), does not conflict with this conclusion. In Payton, the court concluded that “[t]he term ‘redneck’ is a racially derogatory term applied exclusively to members of the white race),]” relying upon a dictionary definition of the word that indicated it was “often a somewhat derogatory term.” Id. at 208 (I), n. 1. Thus, the term “redneck” was not facially race neutral. In this case, however, the prosecutor did not use a derogatory term or state anything linking gold teeth to members of only a certain race in his explanation for the strike of the juror.

 As the majority acknowledges, the employment discrimination cases cited by it in footnote 16 are inapposite to the issue before us because they do not address the facially race-neutral second step of Batson. While facts excerpted from these opinions by the majority may demonstrate that gold teeth can be associated with African-Americans, that fact is relevant to step three of the Batson analysis, not step two.

 Even the majority acknowledges “that nothing in the record demonstrates any actual racial animosity on the part of the prosecutor in justifying his strike.” Maj. op., p. 199, n. 19.

 I acknowledge that valid and reasonable criticisms of the efficacy of the Batson analysis abound. See, e.g., Page, supra (“the Batson peremptory challenge framework is woefully ill-suited to address the problem of race and gender discrimination in jury selection”). But despite these shortcomings, the Batson framework remains the law of the land, and this Court must faithfully follow the guidance of the United States Supreme Court and the Supreme Court of Georgia with regard to its application and resist the urge to reformulate the standard despite the best of intentions. Ga. Const, of 1983, Art. VI, Sec. VI, Par. VI (“The decisions of the Supreme Court shall bind all other courts as precedents.”).