## S00A1600. ALEXANDER v. THE STATE.
### (540 SE2d 196)

SEARS, Justice.

Appellant Willie Alexander appeals from his conviction for malice murder and resulting life sentence.[1] Having reviewed the record, we conclude that the State did not, as appellant claims, strike prospective jurors upon the basis of their race. We also conclude that the trial court did not err in admitting into evidence certain statements made by the murder victim shortly before his death under the necessity exception to the rule against hearsay evidence. Finding no other error associated with appellant's conviction, we affirm.

The evidence introduced at trial showed that the victim, Kevin Thompkins, was shot and killed while working at the Millwhite Corporation processing plant in Attapulgus, Georgia. Investigators concluded that someone outside the warehouse shot the victim through an open door. Outside the open door, investigators found bullet fragments from a Lorcin 9 mm pistol and shoeprints made by Nike "Air Jordan" shoes.

On the day of the murder, the victim had arrived at work agitated from an earlier encounter with appellant. Apparently, the victim was having an affair with appellant's wife, which had led to prior confrontations between the two men.

After the murder, investigators found appellant hiding in a closet at his girlfriend's home in Tallahassee, Florida. Officers received consent from the girlfriend to search the house and recovered a pair of blue jeans and a belt, both later identified as belonging to appellant. An analysis of the clothing revealed that it contained a mixture of the minerals attapulgite, quartz and ankerite, all three of which are processed at the Millwhite plant where the victim was killed.

At trial, evidence was introduced over objection showing that appellant had previously threatened the victim with a knife, and also that appellant had been previously known to carry a Lorcin 9 mm pistol. Appellant's wife testified at trial that on the day before the

---

[1] The crime occurred on June 15, 1998, and appellant was indicted on November 3, 1998. Appellant was found guilty and sentenced on May 11, 1999. A notice of appeal was filed on June 4, 1999. The transcript was certified by the court reporter on June 5, 2000. The appeal was docketed with this Court on June 13, 2000 and submitted for decision without oral argument on August 8, 2000.

murder, appellant had said he was going to kill the victim. She also testified that she had bought appellant a pair of Nike "Air Jordan" shoes, matching the shoeprints found at the crime scene.

1. The evidence introduced at trial, though circumstantial, was sufficient to enable a rational trier of fact to conclude that appellant was guilty of the crimes for which he was convicted,[2] and to exclude every reasonable hypothesis except that of appellant's guilt.[3]

2. Appellant argues that the trial court erred in refusing to grant his *Batson* motion,[4] in which he claimed that the prosecution had failed to offer a race-neutral explanation for the striking of six prospective jurors, all of whom were African American. We disagree.

To prevail on his *Batson* challenge, appellant was required to prove that the State had engaged in purposeful discrimination in the exercise of its peremptory strikes against these prospective jurors.[5] Having reviewed the record, we conclude that the trial court properly denied appellant's *Batson* motion because the State offered satisfactory race-neutral reasons for striking the jurors. The State demonstrated to the court that it removed five of the prospective jurors because each was either the parent or the spouse (or both) of an individual who possessed a criminal record. The State explained to the court that it struck these potential jurors because it wanted to avoid empaneling those individuals who might be biased against the prosecution due to their family history with the criminal justice system. Our precedent shows that the criminal arrest history of a prospective juror's family members is a sufficiently race-neutral reason to satisfy the dictates of *Batson*.[6]

The sixth prospective juror was struck by the State because he had been observed by police associating with convicted felons in an area where crack cocaine was being smoked and distributed. The State explained to the trial court that for this reason, it did not want to empanel the sixth juror. Suspected involvement in criminal activity is a sufficiently race-neutral reason to satisfy *Batson*.[7] Furthermore, in exercising a peremptory strike, the prosecution "may rely on information and advice provided by others so long as this input is not predicated upon the race of the prospective juror."[8] Because the information regarding the sixth prospective juror's suspected criminal activity that was provided to the prosecution by the police was not

---

[2] *Jackson v. Virginia,* 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[3] See *Robbins v. State,* 269 Ga. 500, 501 (499 SE2d 323) (1998).

[4] See *Batson v. Kentucky,* 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986).

[5] *Williams v. State,* 271 Ga. 323, 324 (519 SE2d 232) (1999).

[6] *Floyd v. State,* 272 Ga. 65, 68 (525 SE2d 683) (2000); *Barnes v. State,* 269 Ga. 345, 350 (496 SE2d 674) (1998); *Jenkins v. State,* 269 Ga. 282, 290 (498 SE2d 502) (1998).

[7] *Williams,* 271 Ga. at 325, n. 3.

[8] *Barnes,* supra.

based upon the juror's race, the State was allowed to rely upon it in offering a race-neutral explanation for its strike of the juror.

Accordingly, the trial court did not err in denying appellant's *Batson* motion to the striking of these six prospective jurors.

3. The trial court did not err in admitting into evidence the hearsay statement of the victim, made to a co-worker on the night of the murder, in which the victim said that he had seen appellant in the area of the Millwhite plant, and that he suspected appellant was probably looking for him.

In order to introduce testimony under the necessity exception: (1) the declarant must be dead or otherwise unavailable to testify; (2) there must be particularized guarantees of the statement's trustworthiness; and (3) the statement must be both relevant to a material fact and must also be more probative on that fact than any other evidence that may be procured and offered.[9] A statement has the requisite guarantees of trustworthiness when coupled with circumstances that attribute to its verity.[10]

In this instance, the victim, being deceased, obviously was unavailable to testify as to the substance of his hearsay statement, thus satisfying the first prong of the necessity exception. Moreover, the victim made the statement a short time before his death, and there is no evidence that either the victim or the recounting witness had reason to fabricate the statement. The statement reflected a matter of extreme importance and urgency — the victim's concern for his immediate safety — and is not the type of statement typically motivated by a desire to exaggerate the truth. Moreover, there is no evidence that the victim ever equivocated or recanted with regard to the statement. Thus, we conclude the second prong of the necessity exception is satisfied. Finally, it appears that no other evidence existed that was more probative of appellant's whereabouts immediately preceding the murder, thus satisfying the third prong.

Based upon all of these factors, we conclude that the trial court appropriately invoked the necessity exception to the rule against hearsay evidence when admitting the victim's hearsay statement to his co-worker.

*Judgment affirmed. All the Justices concur.*

DECIDED JANUARY 8, 2001.

*Billy M. Grantham*, for appellant.
*J. Brown Moseley, District Attorney, Thurbert E. Baker, Attorney*

---

[9] *Holmes v. State*, 271 Ga. 138 (516 SE2d 61) (1999).
[10] *Ward v. State*, 271 Ga. 648, 650 (520 SE2d 205) (1999).

*General, Wylencia H. Monroe, Assistant Attorney General*, for appellee.