## S01A0225. DUKES v. THE STATE.

(548 SE2d 328)

SEARS, Justice.

Appellant Ellis Dukes, Jr., appeals his convictions for murder, aggravated assault, kidnapping, and armed robbery.[1] Finding no error associated with either the trial court's handling of the State's peremptory challenges during jury selection or the court's evidentiary rulings during trial, we affirm.

The evidence of record shows that appellant, along with co-defendants Ivey, Rozier, and Quarterman, planned to rob the Hardee's restaurant where Quarterman, who is appellant's nephew, was employed. On the evening of the robbery, Quarterman was working at the Hardee's when appellant telephoned the restaurant for assurance that that night presented a good opportunity for the crimes. Appellant and Ivey then drove in appellant's car to the home of Rozier's brother-in-law, where they retrieved Rozier and said that they intended to "hit" the Hardee's. Appellant, Rozier, and Ivey then drove to the restaurant and appellant instructed the other two men how to execute the robbery. As appellant waited in the car, Rozier entered the restaurant, ordered food, and sat down in the dining area. A man wearing a ski mask, later identified by Rozier as Ivey, entered the restaurant and jumped over the counter, forcing the restaurant manager, Ellis, to the back of the store. Ivey then shot the manager in the head, killing him. The assailants took money from the cash registers and fled in appellant's car. Ivey later described his role in the robbery to his brother-in-law, and stated that he had shot and killed the victim.

At the time of appellant's arrest, police searched his car and discovered: (1) clothing that matched the description of clothes worn by Ivey during the crimes' commission; (2) a loaded 12 gauge shotgun; and (3) a .32 caliber handgun that later testing verified matched the type of handgun used to murder the victim. At appellant's and co-defendant Ivey's trial, Quarterman and Rozier testified on behalf of

---

[1] The crimes were committed on May 28, 1996, and appellant was indicted on June 14, 1996, for malice and felony murder, five counts of aggravated assault, armed robbery, kidnapping, and illegal firearm possession. On October 29, 1996, appellant was convicted on all counts. After the conviction for felony murder and one of the aggravated assault convictions were merged by operation of law, appellant was sentenced to a term of life imprisonment for the malice murder conviction; a consecutive term of life imprisonment for the armed robbery conviction; four consecutive terms of twenty years imprisonment for four armed robbery convictions; a consecutive term of twenty years imprisonment for kidnapping; and a consecutive term of five years imprisonment for illegal firearm possession. The transcript was certified by the court reporter on February 3, 1997. Appellant's new trial motion was filed on November 4, 1996, amended on September 11, 1997, and denied on May 19, 2000. Appellant's notice of appeal was filed on May 22, 2000, the appeal was docketed with this Court on October 25, 2000, and submitted for decision without oral argument on December 18, 2000.

the State.

1. The evidence introduced at trial, considered in a light most favorable to the jury's verdicts, was sufficient to enable a rational trier of fact to conclude that appellant was guilty of the crimes for which he was convicted.[2]

2. The trial court did not err in refusing to grant appellant's *Batson*[3] challenge, in which appellant claimed that the State had failed to offer race-neutral explanations for its exercise of peremptory strikes against four prospective jurors, all of whom were African American.

To prevail on his *Batson* challenge, appellant was required to prove that the State had engaged in purposeful racial discrimination in the exercise of its peremptory strikes against these prospective jurors.[4] In response, the State was required to set forth race-neutral, case-related, clear and reasonably specific explanations for its exercise of the strikes.[5] Our precedent states that an explanation is not racially neutral if it is based upon either a characteristic that is specific to a racial group or a stereotypical belief that is imputed to a particular race.[6]

Having reviewed the record, we conclude that the trial court properly denied appellant's *Batson* motion because the State offered satisfactory race-neutral reasons for striking the jurors. As explained by the State to the trial court, two of the jurors were struck due to their prior convictions for criminal activity.[7] One of the jurors was struck because she displayed an apparent lack of intelligence when compared to other members of the venire, and thus was perceived as being less capable of following the proceedings.[8] The final juror was struck because she expressed a clear and somewhat contentious inclination to avoid serving on the jury, which was sufficient in degree to raise questions about her willingness to fully and impartially participate in the proceedings. While the juror's attitude may not have justified an excuse for cause, it was sufficient to justify the State's exercise of a peremptory strike.[9]

Because our precedent shows clearly that these reasons offered by the State in explanation for its exercise of peremptory strikes

---

[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). It follows that, contrary to appellant's assertion, the trial court did not err in denying his motion for a directed verdict.

[3] See *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986).

[4] *Williams v. State*, 271 Ga. 323, 324 (519 SE2d 232) (1999).

[5] *Pickren v. State*, 272 Ga. 421, 424 (530 SE2d 464) (2000).

[6] Id.

[7] *Alexander v. State*, 273 Ga. 311, 312 (540 SE2d 196) (2001).

[8] *Hill v. State*, 263 Ga. 37, 42 (427 SE2d 770) (1993).

[9] *Floyd v. State*, 272 Ga. 65, 68 (525 SE2d 683) (2000).

against these four jurors were sufficiently race-neutral to pass constitutional muster, the trial court did not err in denying appellant's *Batson* motion.

3. The trial court did not abuse its discretion in failing to declare a mistrial when co-defendant Rozier and co-defendant Quarterman offered testimony that improperly placed appellant's character at issue.

(a) During direct examination, Rozier was asked by the State what he did while visiting at appellant's home, and Rozier replied that he and appellant would "drink liquor and smoke a little weed." On appeal, appellant claims this testimony amounted to improper character evidence, thereby necessitating the declaration of a mistrial. However, the record reveals that appellant failed to object to Rozier's testimony and also failed to seek curative instructions or the declaration of a mistrial at the time of the testimony, and therefore this claim of error is waived on appeal.[10]

(b) Co-defendant Quarterman, appellant's nephew, testified on behalf of the State. He was asked on cross-examination about the circumstances surrounding the making of his statement to investigators. In response, Quarterman volunteered that he "never took [appellant] seriously about him coming to Hardee's to rob. I thought my uncle had changed. He was incarcerated 22 years." Appellant objected and, after a bench conference was held, the trial court instructed Quarterman that he would then be questioned about a different subject. Shortly thereafter, before a recess was announced, the trial court instructed the jury that it was to "completely and absolutely disregard any reference by [Quarterman] to any alleged or supposed prior circumstances involving [appellant]." The trial court then clarified that the jurors should not disregard Quarterman's testimony in its entirety, but that they should disregard "a particular portion of his testimony that may have dealt with another matter entirely and some past reference to [appellant]." Upon the jury's return from recess, the trial court again instructed that the jurors were "to completely and absolutely disregard" Quarterman's testimony regarding appellant's prior incarceration.

Whether to grant a mistrial based upon improper character evidence rests within the trial court's discretion.[11] When a witness improperly testifies about a defendant's prior convictions, thereby placing the defendant's character in evidence, curative instructions given by the trial court may be a proper and adequate remedy.[12] In this matter, Quarterman's reference to appellant's previous incarcer-

---

[10] *Glean v. State*, 268 Ga. 260, 265 (486 SE2d 172) (1997).

[11] *Sims v. State*, 268 Ga. 381, 382 (489 SE2d 809) (1997).

[12] Id.

ation appears to have been inadvertent and was not the result of improper questioning by the State. Furthermore, the trial court's curative instructions were promptly given and clearly informed the jury that it should disregard the improper testimony. Under these circumstances, we conclude that the trial court did not abuse its discretion by giving curative instructions, rather than declaring a mistrial, to remedy Quarterman's improper testimony regarding appellant's character.[13]

4. The trial court did not abuse its discretion by permitting a witness for the State to testify that at the time of appellant's arrest, a loaded shotgun was discovered in the trunk of his car. Evidence of the circumstances surrounding an arrest is subject to the same standards of relevancy and materiality that govern the admission of all other evidence, and the decision whether to admit evidence connected to an arrest lies within the discretion of the trial court.[14]

In this matter, co-defendant Quarterman testified that a shotgun was among the weapons assembled by appellant and the other co-defendants when they planned the robbery. Furthermore, at the time of appellant's arrest, the shotgun was discovered in the car along with a weapon and clothing that were implicated in connection with the robbery and the murder. Accordingly, the trial court did not abuse its discretion in admitting testimony concerning the shotgun into evidence.[15]

*Judgment affirmed. All the Justices concur, except Benham, C. J., who concurs in judgment only as to Division 2.*

DECIDED JUNE 11, 2001.

*Theodore Johnson*, for appellant.
*Paul L. Howard, Jr., District Attorney, Bettieanne C. Hart, Christopher M. Quinn, Alfred D. Dixon, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General, Ruth M. Bebko, Assistant Attorney General,* for appellee.

---

[13] See *Williams v. State*, 262 Ga. 422, 423 (420 SE2d 301) (1992).
[14] *Benford v. State*, 272 Ga. 348, 350 (528 SE2d 795) (2000).
[15] See *McGee v. State*, 267 Ga. 560, 565 (480 SE2d 577) (1997).