### A10A1160. FRANKLIN v. THE STATE.
(699 SE2d 868)

BARNES, Presiding Judge.

A jury found Nakia Franklin guilty of selling cocaine and distributing a controlled substance within 1,000 feet of a park. Franklin appeals, arguing that the trial court erred in (1) refusing to strike a prospective juror for cause; (2) denying his *Batson* challenge; (3) denying his motions for mistrial after a witness put his character into issue and a juror saw him in handcuffs; and (4) permitting the jury to review videotape evidence during deliberations. Finding no error, we affirm.

Viewed favorably to the jury's verdict, the evidence shows that on September 28, 2006, an investigator with the Dooly County

Sheriff's Department asked one of the Department's confidential informants ("CI") to purchase drugs from a particular person as part of an undercover drug operation. The investigator provided the CI with $20 and a car equipped with video surveillance. While driving to the targeted person's house, the CI saw Franklin, whom he knew from high school. The CI picked Franklin up, and they went together to the house. According to the CI, he told Franklin that he wanted a "twenty," which in drug parlance means a "twenty-dollar rock" of crack.

The person they were looking for was not at home when they arrived at the residence. Before they were able to leave, however, another vehicle drove up to the house. Franklin got out of the CI's car, stating: "I might can get this from somebody else." He spoke with someone in the vehicle, then returned to the CI with 0.08 grams of cocaine. The CI took the cocaine and gave Franklin the money.

1. Franklin first argues that the trial court erred in refusing to strike for cause a potential juror who revealed that he was the CI's uncle. Defense counsel questioned the uncle, who stated that he believed he could judge the CI's testimony and the case impartially, despite the relationship. He admitted, however, that it would be "tough" to disbelieve his nephew. Defense counsel inquired: "Do you honestly believe that if you do not believe that your nephew is telling the truth you could say, 'You're not telling the truth?' " The uncle responded that he could not answer the question, and defense counsel moved to disqualify him as a juror. The trial court inquired whether the uncle could listen to the evidence and reach a fair and impartial verdict. The uncle replied: "Yes, sir. I mean I'm going to be fair, yes." The court then denied the motion to disqualify.

We find no error. The uncle's relationship to the CI did not, by itself, disqualify him as a juror. See *Taylor v. State*, 243 Ga. 222, 224 (2) (253 SE2d 191) (1979). Instead, Franklin claims that the relationship made the uncle biased toward the State, requiring a disqualification for favor. See *Harris v. State*, 178 Ga. App. 735, 736 (1) (344 SE2d 528) (1986); OCGA § 15-12-164. Before a juror can be disqualified for favor, however, "it must be shown that an opinion held by the potential juror is so fixed and definite that the juror will be unable to set the opinion aside and decide the case based upon the evidence or the court's charge upon the evidence." *Green v. State*, 300 Ga. App. 688, 689 (1) (686 SE2d 271) (2009). Ultimately, the trial court exercises its discretion in deciding whether a juror is biased, and we will not disturb that ruling absent an abuse of discretion. Id.

Although the uncle was unable to state with certainty that he could reject his nephew's testimony, he believed that he could judge the testimony and the case impartially. He stated unequivocally that he would be fair, and he indicated that he could listen to the evidence

and reach an impartial verdict. Nothing demonstrates that the uncle's opinions — particularly toward the CI — were so fixed and definite that they could not be changed by the evidence. And despite Franklin's claims to the contrary, we find no improper juror rehabilitation here. Compare *Ivey v. State*, 258 Ga. App. 587, 592 (2) (574 SE2d 663) (2002) (trial court improperly rehabilitated prospective juror who initially stated that she could not be fair and impartial, but upon lengthy and repeated questioning by the State and trial court "abandoned her own answers"). Accordingly, the trial court did not abuse its discretion in denying the motion to strike. See *Green*, supra; see also *Taylor*, supra (trial court properly refused to strike from jury pool the mother of a State's witness, who indicated that she trusted her son, but that she could fairly consider all of the evidence and render an impartial verdict).

2. Franklin also claims that the trial court erred in rejecting his *Batson* challenge to the State's use of peremptory strikes. See *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986). Again, we find no error.

Franklin asserted at trial that the State had exercised its peremptory strikes in a racially discriminatory manner, using eight of nine challenges against African-Americans. In response, the prosecutor provided the following explanations for the strikes:[1] Juror A knew the CI; Jurors B and C knew Franklin; the prosecutor was told that Jurors D and E, as well as Juror E's family, had been involved with drugs; Juror F was unemployed; Juror G was observed at the courthouse "being very friendly" with Franklin; and Juror H had a prior marijuana conviction and knew Franklin. The trial court deemed the explanations race-neutral and denied Franklin's *Batson* challenge.

A *Batson* claim is resolved using a three-step analysis. See *Cowan v. State*, 279 Ga. App. 532, 534 (2) (631 SE2d 760) (2006). A defendant who raises a *Batson* challenge to the State's jury strikes must first make a prima facie showing of racial discrimination. If the necessary showing is made, the burden shifts to the State to provide a race-neutral reason for the strikes. At that point, the trial court must determine whether the defendant has proven discriminatory intent. Id. "Whether discriminatory intent exists is generally a matter for the trial court, as such finding rests largely upon assessment of the prosecutor's state of mind and credibility." (Punctuation omitted.) Id. The trial court's decision in this regard is entitled to great deference. Id.

---

[1] For ease of discussion, we will refer to the eight individuals as Jurors A through H.

(a) The prosecutor asserted that she struck Jurors A, B, and C based on their connection to either the CI or Franklin. A juror's acquaintance with a witness or the defendant is a race-neutral reason for a peremptory strike. See *Blackshear v. State*, 285 Ga. 619, 621 (3) (680 SE2d 850) (2009); *Bass v. State*, 271 Ga. App. 228, 232 (4) (609 SE2d 386) (2005). On appeal, however, Franklin argues that the stated reasons were pretextual because "various other people who reported that they knew the defendant were not struck by the State," and the State did not strike the CI's uncle.

It is true that "failure to treat similarly situated jurors in a like manner may support a finding of discrimination." *Cowan*, supra, 279 Ga. App. 534. With the exception of the CI's uncle, however, Franklin did not identify the "various other people" that he contends were similarly situated to the excused jurors, leaving the trial court and this Court with no ability to assess similarity. Moreover, given the uncle's particular relationship to the CI, the trial court was authorized to find that he was not similarly situated to the jurors who were struck. The trial court, therefore, properly found no discriminatory pattern or intent with respect to these strikes. See *Overton v. State*, 295 Ga. App. 223, 240 (9) (671 SE2d 507) (2008).

(b) Similarly, the trial court did not err in rejecting Franklin's challenge to the remaining strikes. Jurors D and E were excused because the State learned that they had been involved with drugs, and Juror H had a prior drug conviction. Strikes based on these reasons are appropriate and race-neutral. See *Blackshear*, supra, 285 Ga. at 621. Lack of employment, the basis for striking Juror F, has also been deemed race-neutral. See *Ware v. State*, 258 Ga. App. 706, 708 (2) (574 SE2d 898) (2002). And a juror's friendliness toward the defendant — the explanation given with respect to Juror G — is a proper ground for a strike. See *Duffie v. State*, 301 Ga. App. 607, 611-612 (3) (688 SE2d 389) (2009).

3. At trial, the State asked the CI whether Franklin understood that the term "twenty" meant that the CI wanted to purchase $20 worth of cocaine. The CI indicated that Franklin understood, and defense counsel objected on speculation grounds. The trial court overruled the objection. The State then asked the CI how he knew Franklin understood. The CI responded: "From my past history. I'm on crack — I was on crack and I know he was on crack." At that point, defense counsel moved for a mistrial, arguing that the CI had placed Franklin's character into issue. The trial court denied the motion, but instructed the jury as follows:

> Members of the Jury, there was a comment made in the testimony about the defendant in this case using crack. I'm telling you . . . to disregard that, to disabuse your minds of

it totally, don't give it any consideration whatsoever as far as this case is concerned.

Franklin argues that the trial court erred in denying his motion for mistrial. But a court has discretion to give curative instructions rather than grant a mistrial following introduction of bad character evidence. See *Cobb v. State*, 302 Ga. App. 821, 823 (1) (692 SE2d 65) (2010). The trial court found that the CI's reference to Franklin's prior drug use was inadvertent and unsolicited by the State. Although it determined that a mistrial was not necessary, it promptly instructed the jury to disregard the comment. Franklin has not demonstrated an abuse of discretion here. See *Dukes v. State*, 273 Ga. 890, 892-893 (3) (548 SE2d 328) (2001); *Cobb*, supra.

4. Next, Franklin argues that the trial court should have granted a mistrial when a juror saw him in handcuffs. The record shows that after the jury was dismissed one afternoon, a juror walked into the courtroom while Franklin was standing with his hands cuffed behind his back. Franklin moved for a mistrial the following day, and the trial court questioned the juror generally about what she had observed. She acknowledged seeing Franklin and several other people in the courtroom, but did not mention the handcuffs. The trial court denied the motion for mistrial.

Generally, jurors should not be permitted to observe a defendant handcuffed in the courthouse. See *Wilbanks v. State*, 251 Ga. App. 248, 252 (3) (554 SE2d 248) (2001). But where a juror "by chance sees a defendant in handcuffs, whether to grant a mistrial is within the trial court's discretion." Id. Franklin has offered no evidence that the juror actually saw the handcuffs or that the alleged sighting prejudiced him. Accordingly, the trial court did not abuse its discretion by denying the motion for mistrial. See id.; *Casey v. State*, 237 Ga. App. 461, 461-462 (1) (515 SE2d 429) (1999).

5. During deliberations, the jury asked permission to rewatch videotaped evidence of the alleged drug transaction. Franklin objected, but the trial court allowed the jury to view the videotape in the courtroom. Franklin enumerates this ruling as error.

"The replaying of evidence which the jury asks to hear is within the discretion of the trial court." (Punctuation omitted.) *Berman v. State*, 279 Ga. App. 867, 871 (5) (632 SE2d 757) (2006). Moreover, "we have specifically approved a trial court's decision to replay a videotape for the jury under the controlled conditions of the courtroom." (Punctuation omitted.) Id. Although Franklin now argues that the parties "stipulated" that the video could not be rewatched by the jury, the record contains no such stipulation. At most, the parties agreed that the videotape would not be sent to the jury room during deliberations. Nothing barred the trial court from allowing

the jury to view the video in the courtroom, and we find no abuse of discretion. It follows that this claim of error lacks merit.

*Judgment affirmed. Senior Appellate Judge G. Alan Blackburn and Senior Appellate Judge William LeRoy McMurray, Jr., concur.*

DECIDED AUGUST 12, 2010.

*Steven W. Czarnota, Timothy L. Eidson,* for appellant.
*Denise D. Fachini, District Attorney, Henry O. Jones III, Assistant District Attorney,* for appellee.