**FIRST DIVISION**
**DOYLE, C. J.,**
**ANDREWS and RAY, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**February 17, 2017**

# In the Court of Appeals of Georgia

A16A2147. CLAYTON v. THE STATE.                    DO-071 C

A16A2148. MINOR v. THE STATE.                     DO-072 C

DOYLE, Chief Judge.

Duvalle Rene Minor and Robert Anthony Clayton were jointly indicted, tried, and convicted of armed robbery and criminal attempt to commit armed robbery. Following the denial of their motions for a new trial, they appealed their convictions to this Court, and in a consolidated opinion in *Minor v. State* ("*Minor I*"),[1] the Court affirmed the judgments of conviction but remanded the cases for a new hearing to determine whether the State violated *Batson v. Kentucky*[2] when it peremptorily struck

---

[1] 328 Ga. App. 128 (761 SE2d 538) (2014).

[2] 476 U. S. 79 (106 SCt 1712, 90 LE2d 69) (1986).

Juror No. 31 from the venire.[3] On remand, the trial court held a hearing and found that the State's stated reasons for striking the juror were race-neutral, so no *Batson* violation had occurred. In Case No. A16A2147, Clayton appeals that ruling, and in Case No. A16A2148, Minor does the same. We have consolidated the appeals for review, and for the reasons that follow, we reverse.

> The analysis of a *Batson* challenge involves a three-step process: (1) the opponent of a peremptory challenge must make a prima facie showing of racial discrimination; (2) the proponent of the strike must then provide a race-neutral explanation for the strike; and (3) the court must decide whether the opponent of the strike has proven the proponent's discriminatory intent.[4]

---

[3] This Court held that two other *Batson* challenges made by Clayton were without merit. See *Minor*, 328 Ga. App. at 140 (6). The Court also held that the evidence sufficed to support the convictions, the defendants did not receive ineffective assistance of trial counsel, the trial court did not improperly invade the province of the jury, and the trial court did not improperly charge the jury on the burden of proof. See id. at 129-145 (1)-(8).

[4] (Punctuation omitted.) *Toomer v. State*, 292 Ga. 49, 52 (2) (a) (734 SE2d 333) (2012).

"A trial court's finding as to whether the opponent of a strike has proven discriminatory intent is entitled to great deference and will not be disturbed unless clearly erroneous."[5]

As noted in the earlier appeal, the voir dire was not transcribed, but the record reflects that the State exercised nine strikes, six for African-American people and three for white people, and the resulting jury was composed of two African-American jurors and nine white jurors. After defense counsel[6] raised the *Batson* issue on this ground, the trial court "require[d] the State to articulate its reasons for the peremptory strikes, rendering moot the issue of whether [defense counsel] had established a prima facie case."[7] The State gave as its reasons for striking Juror No. 31 as follows:

> [The juror] has a conviction for theft by receiving. This is a theft-related case. [The juror] also has gold teeth. Now, that's not a definitive factor, but the fact of the matter is, in general, when I see jurors who have gold teeth that's – I just don't like that so I don't think that's race. If they were white and had gold teeth I would have the same reaction. But it's

---

[5] (Punctuation omitted.) *Woodall v. State*, 294 Ga. 624, 627 (3) (754 SE2d 335) (2014).

[6] The *Batson* motion was first announced by Clayton's trial counsel, but Minor's counsel participated in the argument, and both joined the motion. For purposes of this appeal, we treat their *Batson* arguments jointly.

[7] *Arrington v. State*, 286 Ga. 335, 339 (9) (687 SE2d 438) (2009).

3

primarily the theft, the fact that he has a theft of a motorcycle, that charge.

Defense counsel then countered that the alleged theft charge was actually a misdemeanor criminal damage charge, and he began to challenge the State's proffered gold teeth rationale when the trial court cut him off:

Defense counsel: Your Honor, I believe it was clear that it wasn't a theft. . . He was charged with misdemeanor criminal damage. It wasn't a felony that was knocked down to a misdemeanor. It started as a misdemeanor, and I don't see the issue there. Regarding gold teeth –

Trial court: I'm not impressed by the gold[-]teeth argument. I'm not impressed by his gold teeth argument.

Defense counsel: Neither am I, and neither was – I believe his name was David, on record. It was a case I tried with Mr. Knighton –

Trial court: Okay. Let's not go there. I said I'm not going to accept the gold[-]teeth argument. Do you want to talk me out of it?

Defense counsel: You say you're not impressed with it. I'm good with that.

Trial court: No, he was charged with a theft. This was an interesting jury, quite frankly. An interesting jury panel – and we do have some

4

folks on there who have had some charges, because there just wasn't any way for everybody – to get everybody off. But I do find it to be race neutral. And the last strike was of a white female. So I deny the *Batson* [c]hallenge.

In *Minor I*, this Court held that the above colloquy showed that the trial court failed to allow defense counsel to fully articulate "that the prosecution's strike based on Juror No. 31's gold teeth arose from a racial stereotype," so the record was incomplete with respect to the requisite findings under *Batson*.[8] Accordingly, this Court:

remand[ed] the case in order to permit the defense to [fully explain its argument that the strike was racially discriminatory] and to allow the trial court to make findings under *Batson*. Should the trial court determine that the State did not fulfill its burden to provide racially-neutral reasons, a new trial is in order. Should the trial court determine that no *Batson* violation occurred, appellant's convictions will remain in effect.[9]

On remand, the trial court held a hearing, and counsel for Clayton and Minor articulated their objections to the State's decision to strike Juror No. 31. They argued

---

[8] *Minor*, 328 Ga. App. at 138 (4).

[9] (Punctuation omitted.) Id. at 139 (4).

5

that the State's gold-teeth rationale was a race-based stereotype of the African-American community, and the State's reliance on Juror No. 31's alleged involvement in the theft of a motorcycle was a race-neutral pretext for the State's explicitly race-based strike. The State responded by re-stating that its rationale was based on both the juror's criminal history and the fact that he had gold teeth. Counsel for the State explained further:

> My recollection is actually . . . it was actually gold teeth. I think it was his entire mouth. I don't believe that is race related. I think it's something that you choose. You go to the dentist. You decide what you want. You get that cosmetic.

> I think around the time period of this trial . . . there [was] Ryan Lochte at the Olympics put on the gold teeth[,] and there was this attitude or there were these other people who were wearing this. I don't think it's race related. I don't consider it race related.

> And for me, the gold teeth issue is similar – there are a lot of people who have a, I guess, an interest[,] and they'll [dye] their hair blue or they'll [dye] their hair red. There are people who wear nose rings or have eyebrow rings. I don't think that . . . makes them a bad person, but I think what it says to them is they are purposely setting themselves apart. They're being iconoclastic. They want to look different from the normal person. . . [T]hat is telling me . . . a little bit about the thinking of that person. . . And that, in combination with the fact that he was arrested for

6

felony theft of a motorcycle and was pled down to theft by receiving of a motorcycle, forms a picture for me of that juror and what is going on in his mind. . . It has nothing to do with race.

On rebuttal, defense counsel reiterated his view that gold teeth are a stereotype associated with the African-American community.

Based on the State's explanation, the trial court held that the State's reasons for striking Juror No. 31 were race neutral. With respect to the gold-teeth argument, the trial court accepted the State's explanation that it would strike a juror with gold teeth regardless of race: "The Court finds that this is a race[-]neutral explanation. Jurors who want to be different i[n] such an obvious way do not usually make good jurors, they tend to not want to go along with the majority in reaching a verdict. They want to be different." Finding the State's explanation to be race neutral, the court held that no *Batson* violation had occurred. Minor and Clayton now appeal from that ruling.

We first examine the State's rationale regarding the prospective juror's criminal history. It is well-settled that, at least in the context of a criminal trial, "[a] prospective juror's criminal history is an adequate race-neutral reason to" exercise a

7

peremptory strike.[10] "A reasonable suspicion about a prospective juror's impartiality [towards the State] that falls short of justifying an excusal for cause might well justify the exercise of a peremptory strike."[11] Therefore, the trial court correctly held that this ground was race neutral and not a basis for a successful *Batson* challenge.

But the State also explicitly relied on the fact that Juror No. 31 had gold teeth in his "entire mouth." "Our precedent states that an explanation is not racially neutral if it is based upon either a characteristic that is specific to a racial group or a stereotypical belief that is imputed to a particular race."[12] Although the State argued otherwise,[13] we cannot ignore the fact that having a full mouth of gold teeth is a racial

[10] *Jackson v. State*, 288 Ga. App. 339, 344 (1) (b) (ii) (654 SE2d 137) (2007), citing *Dukes v. State*, 273 Ga. 890, 891-892 (2) (548 SE2d 328) (2001); *Williams v. State*, 271 Ga. 323, 325 (2), n. 3 (519 SE2d 232) (1999). See also *Alexander v. State*, 273 Ga. 311, 312 (2) (540 SE2d 196) (2001) (holding that the criminal arrest history even of a juror's family members "is a sufficiently race-neutral reason to satisfy the dictates of *Batson*").

[11] (Punctuation omitted.) *Floyd v. State*, 272 Ga. 65, 68 (3) (525 SE2d 683) (2000).

[12] *Dukes*, 273 Ga. at 891 (2). See also *Lewis v. State*, 262 Ga. 679, 680 (2) (424 SE2d 626) (1993) ("The exercise of a peremptory challenge must not be based on either the race of the juror or the racial stereotypes held by the party.") (punctuation omitted).

[13] The State argued in part that famous Olympic swimmer Ryan Lochte's notorious display of a "grill" during the 2016 Summer Olympics shows that some

stereotype associated with African Americans.[14] The existence of this stereotype was

white people also have gold teeth because Lochte is white. But the fact that a fashion idiom has developed in popular culture does not cure the stereotypical application in this case. Further, the fact that a racial stereotype is intended to describe only a subgroup of a particular race does not make it permissible under *Batson*. See, e.g., *Payton v. Kearse*, 329 S.C. 51, 56 (495 SE2d 205) (1998) (granting a new trial based on a party's strike of a "redneck," noting that the term "stereotypes a subgroup of the white race"). The State also argues that the gold teeth were comparable to unusual adornment, such as an eyebrow ring, citing *Chandler v. State*, 281 Ga. 712, 716-717 (3) (642 SE2d 646) (2007), which deemed having such "body art" to be race neutral. But the *Chandler* opinion notes that an eyebrow ring does not implicate a racial stereotype, citing by comparison *Rector v. State*, 213 Ga. App. 450, 454 (2) (444 SE2d 862) (1994), which, as more fully explained below, affirmed a trial court's finding that having a gold tooth was not an acceptable race-neutral rationale for striking a juror. See *Chandler*, 281 Ga. at 717 (3), citing *Rector*, 213 Ga. App. at 454 (2).

[14] See *Rector*, 213 Ga. App. at 454 (no abuse of discretion in ruling that having gold teeth is a racial stereotype under *Batson*). See also *January v. Outokumpu Stainless USA, LLC*, No. 15-00040 (S.D. Ala. Jul. 28, 2016) (memorandum opinion in an employment discrimination case recounting a fellow employee's bigoted comment "that only black people wear gold teeth and if a white employee spent too much time around the [African-American] Plaintiff, he would begin wearing gold teeth also"); *Medina v. Secretary, Dept. of Corrections*, No. 11-20907 (S.D. Fla. Nov. 24, 2015) (order noting a prosecutor's characterization of the defendant's fabricated defense as a "racist stereotype" implicating "some young black guy . . . [with] gold teeth"); *Sears v. Home Depot, USA, Inc.*, 943 S2d 1219, 1231-1232 (La. Ct. App. 2006) (noting in an employment discrimination case that a fellow employee's comment that "he would have to buy sunglasses because another African-American employee had so many gold teeth" was part of a series of racially "insensitive [remarks] reflecting profound ignorance on the part of the speaker"); *Yancey v. Sheriff of Jefferson County*, No. 2002-CA-00029 (Ky. Ct. App. Feb. 20, 2004) (unpublished) (noting in an employment discrimination case brought by an African-American plaintiff that a comment that "everybody down there had gold teeth in their

9

explicitly identified by defense counsel on remand, and it was implicitly noted by the trial court during trial when she immediately interrupted defense counsel as he began to address the State's gold-teeth rationale and said, "I'm not impressed by the gold[-]teeth argument. I'm not impressed by his gold[-]teeth argument. . . I'm not going to accept the gold[-]teeth argument."

Although the trial court ultimately did accept the State's overall argument, including the State's reliance on the juror's criminal history, this overlooks the fact that the State justified its strike in part by referencing a racial stereotype. Nothing in the transcript reveals any willful racial animosity on the part of the prosecutor, but "the purpose of *Batson* step two is to uncover the actual thinking behind the

---

mouth" was "mildly offensive"). See also Urban Dictionary, http://www.urbandictionary.com/define.php?term=gold+teeth (retrieved Jan. 4, 2017) (noting the origin of obtaining gold teeth as a sign of freedom and wealth among emancipated slaves as well as general contemporary adaptation in hip hop culture). Compare *Fields v. State*, No. 05-02-01665-CR (Tex. Crim. App. Jan. 14, 2004) (unpublished) (finding no *Batson* violation based on a stated gold teeth rationale because "there was no statistical information presented to show whether African Americans have more gold teeth . . . [and] the prosecutor stated that if [the juror] had been white, he would have struck him" for the same reason) (punctuation omitted); *Hayes v. State*, 2003 Tex. App. LEXIS 3827 (Tex. Ct. App. May 1, 2003) (unpublished) (classifying having gold teeth as race neutral). Although many of the above cases are unpublished, we do not rely on their precedential value in establishing a legal rule. Instead, these cases demonstrate the use of gold teeth as a racial stereotype in American culture.

10

proponent's decision to strike a prospective juror, including any *unconscious* bias or stereotypes. . . ."[15] Articulating a racial stereotype is a facially invalid response to a *Batson* challenge even if it is rationalized in purportedly race-neutral terms.[16]

As noted in *Minor I*,[17] this Court addressed a similar scenario in *Rector v. State*.[18] In that case, the prosecutor justified his strike of an African-American juror based in part on her "big gold tooth with a pattern on it right in the front of her mouth."[19] The State also articulated other ostensibly race-neutral bases, such as having only a high-school education, exhibiting a lack of general intelligence, not knowing where her sons worked as janitors, and having a meager employment history.[20] After hearing from counsel, the trial court ruled that the gold-tooth

---

[15] (Emphasis added.) *Toomer*, 292 Ga. at 57 (2) (c).

[16] See generally *Toomer*, 292 Ga. at 54 (2) (a) ("At [the] second step of the inquiry, the issue is the facial validity of the prosecutor's explanation. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral.") (punctuation omitted), quoting *Purkett v. Elem*, 514 U. S. 765, 768 (115 SCt 1769, 131 LE2d 834) (1995).

[17] *Minor*, 328 Ga. App. at 137-139 (4).

[18] 213 Ga. App. 450.

[19] Id. at 452 (2).

[20] See id.

explanation "in and of itself" would not be accepted, but the other stated reasons properly justified the strike as race-neutral.[21] On appeal, this Court reversed and held that the trial court "erred in ruling that other purportedly race neutral explanations cured the element of the stereotypical reasoning employed by the State's attorney in exercising a peremptory strike."[22] The Court explained that "[e]ven though the State's attorney may have given other racially neutral explanations, the trial court's finding of one racially motivated explanation vitiates the legitimacy of the entire jury selection procedure."[23] Thus, as stated by the Georgia Supreme Court in *Lingo v. State*,[24] if "racially-neutral and neutrally applied reasons are given for a strike, the simultaneous existence of any [facially] racially motivated explanation results in a *Batson* violation."[25]

---

[21] Id. at 454 (2).

[22] Id.

[23] (Punctuation omitted.) Id. at 454-455.

[24] 263 Ga. 664 (437 SE2d 463) (1993).

[25] Id. at 668 n. 4 (1) (c) (discussing cases collected in *Strozier v. Clark*, 206 Ga. App. 85, 88 (424 SE2d 368) (1992)). See, e.g., *State v. Tomlin*, 299 S.C. 294, 299 (384 SE2d 707) (1989) (reversing and holding that the juror's demeanor was a permissible basis for a strike under *Batson* but the prosecutor's characterization that the African-American juror "shucked and jived" as he walked to the microphone was a racial stereotype that "clearly violates the mandates of *Batson*") (punctuation

In the present case, the State's gold-teeth rationale was fatal to its argument that it struck Juror No. 31 for a race-neutral reason. Despite the great deference due to the trial court's determination under *Batson*, this race-based rationale demonstrates clear error in the trial court's finding that the State's reason for striking the juror was race neutral. Accordingly, we reverse the trial court's judgment denying the motions for new trial filed by Minor and Clayton.[26]

*Judgments reversed in Case Nos. A16A2147 and A16A2148. Andrews, J., concurs. Ray, J., concurs in judgment only.*

---

omitted). Compare *Knuckles v. State*, 236 Ga. App. 449, 451-453 (1) (a), (b) (512 SE2d 333) (1999) (affirming conviction and finding no *Batson* violation based on a race-neutral nose ring and where no *facially* race-based reason was given, despite the trial court's finding of a pattern of discrimination accompanying a race neutral reason). In *Strozier*, the second reason given was *facially* racially motivated, which pervaded the exercise of the strike no matter what other reasons were given. See *Strozier*, 263 Ga. at 87 (5).

[26] See *Rector*, 213 Ga. App. at 455 (2).