DOYLE, Chief Judge.
Duvalle Rene Minor and Robert Anthony Clayton were jointly indicted, tried, and convicted of armed robbery and criminal attempt to commit armed robbery Following the denial of their motions for a new trial, they appealed their convictions to this Court, and in a consolidated opinion in Minor v. State (“Minor I”),[1] the Court affirmed the judgments of conviction but remanded the cases for a new hearing to determine whether the State violated Batson v. Kentucky[2] when it peremptorily struck Juror No. 31 from the venire.[3] On remand, the trial court held a hearing and found that no Batson violation had *194 occurred. In Case No. A16A2147, Clayton appeals that ruling, and in Case No. A16A2148, Minor does the same. We have consolidated the appeals for review, and for the reasons that follow, we reverse.

Relevant Facts

As noted in the earlier appeal, the voir dire was not transcribed, but the record reflects that the State exercised nine strikes, six against African-American people and three against white people, and the resulting jury was composed of two African-American jurors and nine white jurors. After defense counsel[4] raised the Batson issue on this ground, the trial court “require[d] the State to articulate its reasons for the peremptory strikes, rendering moot the issue of whether [defense counsel] had established a prima facie case.”[5]
The State gave as its reasons for striking Juror No. 31 as follows:
[The juror] has a conviction for theft by receiving. This is a theft-related case. [The juror] also has gold teeth. Now, that’s not a definitive factor, but the fact of the matter is, in general, when I see jurors who have gold teeth that’s — I just don’t like that so I don’t think that’s race. If they were white and had gold teeth I would have the same reaction. But it’s primarily the theft, the fact that he has a theft of a motorcycle, that charge.
Defense counsel then countered that the alleged theft charge was actually a misdemeanor criminal damage charge, and he began to challenge the State’s proffered gold-teeth rationale when the trial court cut him off:
DEFENSE COUNSEL: Your Honor, I believe it was clear that it wasn’t a theft.... He was charged with misdemeanor criminal damage. It wasn’t a felony that was knocked down to a misdemeanor. It started as a misdemeanor, and I don’t see the issue there. Regarding gold teeth —
TRIAL COURT: I’m not impressed by the gold[-]teeth argument. I’m not impressed by his gold[-]teeth argument.
*195 DEFENSE COUNSEL: Neither am I, and neither was — I believe his name was David, on record. It was a case I tried with Mr. Knighton —
TRIAL COURT: Okay. Let’s not go there. I said I’m not going to accept the [State’s] gold[-]teeth argument.[6] Do you want to talk me out of it?
DEFENSE COUNSEL: You say you’re not impressed with it. I’m good with that.
TRIAL COURT: No, he was charged with a theft. This was an interesting jury, quite frankly. An interesting jury panel — and we do have some folks on there who have had some charges, because there just wasn’t any way for everybody — to get everybody off. But I do find it to be race neutral. And the last strike was of a white female. So I deny the Batson [cjhallenge.
In Minor I, this Court held that the above colloquy showed that the trial court failed to allow defense counsel to fully articulate “that the prosecution’s strike based on Juror No. 3 l’s gold teeth arose from a racial stereotype,” so the record was incomplete with respect to the requisite findings under Batson.[7] Having so found, this Court
remand[ed] the case in order to permit the defense to [fully explain its argument that the strike was racially discriminatory] and to allow the trial court to make findings under Batson . Should the trial court determine that the State did not fulfill its burden to provide racially-neutral reasons, a new trial is in order. Should the trial court determine that no Batson violation occurred, appellant’s convictions will remain in effect.[8]
On remand, the trial court held a hearing in which she limited the argument to address only the gold-teeth rationale as to Juror No. 31, and defense counsel outlined their objections. Defense counsel explained that the State’s gold-teeth rationale was a race-based *196 stereotype of African-American culture, and the State’s reliance on Juror No. 31’s alleged involvement in the theft of a motorcycle was merely a pretext for the State’s explicitly race-based strike. The State responded by restating that its rationale was based on both the juror’s criminal history and the fact that he had gold teeth. The prosecutor explained:
My recollection is actually... it was actually gold teeth. I think it was his entire mouth. I don’t believe that is race related. I think it’s something that you choose. You go to the dentist. You decide what you want. You get that cosmetic.
I think around the time period of this trial... there [was] Ryan Lochte at the Olympics put on the gold teeth[,] and there was this attitude or there were these other people who were wearing this. I don’t think it’s race related. I don’t consider it race related.
And for me, the gold[-]teeth issue is similar — there are a lot of people who have a, I guess, an interest^] and they’ll [dye] their hair blue or they’ll [dye] their hair red. There are people who wear nose rings or have eyebrow rings. I don’t think that. . . makes them a bad person, but I think what it says to them is they are purposely setting themselves apart. They’re being iconoclastic. They want to look different from the normal per son_[T]hat is telling me ... a little bit about the thinking of that person. . . . And that, in combination with the fact that he was arrested for felony theft of a motorcycle and was pled down to theft by receiving of a motorcycle, forms a picture for me of that juror and what is going on in his mind. ... It has nothing to do with race.
On rebuttal, defense counsel reiterated the argument that gold teeth are a stereotype associated with the African-American community.
Based on the State’s explanation, the trial court held that the State’s reasons for striking Juror No. 31 were race neutral. With respect to the gold-teeth argument, the trial court made no express findings as to whether having gold teeth was a race-based stereotype, but accepted the State’s explanation that it would strike a juror with gold teeth regardless of race: “The Court finds that this is a race[-] neutral explanation. Jurors who want to be different [in] such an obvious way do not usually make good jurors, they tend to not want to go along with the majority in reaching a verdict. They want to be different.” Thus, the court held that no Batson violation had occurred. Minor and Clayton now appeal from that ruling.

*197
Legal Analysis

The analysis of a Batson challenge involves a three-step process: (1) the opponent of a peremptory challenge must make a prima facie showing of racial discrimination; (2) the proponent of the strike must then provide a race-neutral explanation for the strike; and (3) the court must decide whether the opponent of the strike has proven [the proponent’s] discriminatory intent.[9]
The focus of this case is on step two of the Batson process. Rulings made at this step
are entitled to no deference [on appeal]. There are numerous appellate decisions ruling as a matter of law that proffered explanations were or were not race-neutral. Therefore, in practice, appellate review after a step two ruling is de novo.. .. [0]ur review of rulings at stage two is analogous to our rulings on motions for summary judgment or to our former rulings on demurrers in common law.[10]
With respect to the State’s burden at step two as the proponent of the strike, the State
need only articulate a facially race-neutral reason for the strike. Step two does not demand an explanation that is persuasive, or even plausible. At this second step of the inquiry, the issue is the facial validity of the prosecutor’s explanation. Unless a discriminatory intent is inherent in the prosecutor’s explanation, the reason offered will be deemed race neutral.[11]
It is well settled that, at least in the context of a criminal trial, “[a] prospective juror’s criminal history is an adequate race-neutral reason to” exercise a peremptory strike.[12] “A reasonable suspicion *198 about a prospective juror’s impartiality [toward the State] that falls short of justifying an excusal for cause might well justify the exercise of a peremptory strike.”[13] Thus, the State’s reliance on Juror No. 31’s criminal history was a valid, race-neutral reason to exercise the strike.
Nevertheless, also at step two of the Batson process, the State explicitly relied on the fact that Juror No. 31 had gold teeth in his “entire mouth.” “Our precedent states that an explanation is not racially neutral if it is based upon either a characteristic that is specific to a racial group or a stereotypical belief that is imputed to a particular race.”[14] Thus, although the State argued otherwise,[15] we cannot ignore the fact that having a full mouth of gold teeth is a cultural proxy stereotypically associated with African-Americans.[16] *199 As with most stereotypes, this characteristic is not couched in terms that explicitly reference race — nothing about having gold teeth describes skin tone in a literal sense — but it has widely operated as a proxy for the African-American race (or a subset ofthat race).[17] The dissent by Judge McFadden points out that having gold teeth is iconoclastic, which could be a valid objection to a juror if it were a race-neutral iconoclasm such as dying hair unnatural colors or having unusual visible tattoos. But the potential iconoclasm of having gold teeth does not negate its usage in American culture as a stereotypical proxy for (or association with) the African-American race.[18] Under these circumstances, striking the African-American juror because he had a full set of gold teeth cannot be said to be race neutral.
Because articulating a racial stereotype is not facially race-neutral, the State failed to meet its burden at Batson step two to articulate a facially race-neutral reason for the strike, even if the State attempted to rationalize its reason in purportedly race-neutral terms.[19] As stated by the United States Supreme Court in Burkett v. Elem, “[i]t is not until the third step that the persuasiveness of the [race-neutral] justification [given at step two] becomes relevant. . . .”[20] This contemplates that a race-neutral reason was given at step two. Here, because the State failed to meet its burden in step *200 two, the prosecutor’s justification for offering a facially discriminatory rationale is not relevant, and we need not reach step three of the Batson analysis, as the dissents do.
Having determined that the State’s reliance on the juror’s gold teeth did not satisfy its burden at step two of Batson , we next look at whether having an alternative reason for the strike (the juror’s criminal history) saves the strike. In this circumstance, Georgia law holds that a Batson violation results from a race-based reason even if it is accompanied by a race-neutral reason. In Rector v. State,[21] the prosecutor justified his strike of an African-American juror based in part on her “big gold tooth with a pattern on it right in the front of her mouth.”[22] The State also articulated other ostensibly race-neutral bases, such as having only a high school education, exhibiting a lack of general intelligence, not knowing where her sons worked as janitors, and having a meager employment history.[23] After hearing from counsel, the trial court ruled that the gold-tooth explanation “in and of itself” would not be accepted due to its stereotypical nature, but the other stated reasons properly justified the strike as race-neutral.[24] On appeal, this Court reversed and held that the trial court “erred in ruling that other purportedly race[-]neutral explanations cured the element of the stereotypical reasoning employed by the State’s attorney in exercising a peremptory strike.”[25] The Court explained that “[ejven though the State’s attorney may have given *201 other racially neutral explanations, the trial court’s finding of one racially motivated explanation vitiates the legitimacy of the entire jury selection procedure.”[26] As noted by the Supreme Court of Georgia in Lingo v. State,[27] if “racially-neutral and neutrally applied reasons are given for a strike, the simultaneous existence of any [facially] racially motivated explanation results in a Batson violation.”[28] In short, under current Georgia law, an alternative race-neutral basis does not cure the facially race-based reason given by the State.
Accordingly, the trial court erred by finding there was no Batson violation, and we therefore reverse the trial court’s judgment denying the motions for new trial filed by Minor and Clayton.[29]

Judgments reversed.

Barnes, P. J., Miller, P. J., and McMillian, J., concur. Andrews, J., concurs in judgment only. McFadden, P. J., Ray, Rickman, and Self, JJ., dissent.

 328 Ga. App. 128 (761 SE2d 538) (2014).

 476 U. S. 79 (106 SCt 1712, 90 LE2d 69) (1986).

 This Court held that two other Batson challenges made by Clayton were without merit. See Minor, 328 Ga.App. at 140 (6). The Court also held that the evidence sufficed to support the convictions, the defendants did not receive ineffective assistance of trial counsel, the trial court did not improperly invade the province of the jury, and the trial court did not improperly charge the jury on the burden of proof. See id. at 129-145 (1)-(8).

 The Batson motion was first announced by Clayton’s trial counsel, but Minor’s counsel participated in the argument, and both joined the motion. For purposes of this appeal, we treat their Batson arguments jointly.

 Arrington v. State, 286 Ga. 335, 339 (9) (687 SE2d 438) (2009).

 (Emphasis supplied.)

 Minor, 328 Ga. App. at 138 (4). Another reading of the trial court’s ultimate analysis in Minor I is that the court used a “dual motivation” or “mixed motive” approach and found no Batson violation because the prosecutor would have properly struck the juror even without the stated discriminatory reason. Compare United States v. Tokars, 95 F3d 1520, 1533 (IV) (11th Cir. 1996) (noting adoption by 11th Circuit of the dual motivation analysis); Guzman v. State, 85 SW3d 242, 247 (II) (B) (Tex. Crim. App. 2002) (outlining dual or mixed motivation analysis). As explained below, that approach is not followed under current Georgia law.

 (Punctuation omitted.) Minor, 328 Ga. App. at 139 (4).

 (Punctuation omitted.) Toomer v. State, 292 Ga. 49, 52 (2) (a) (734 SE2d 333) (2012).

 (Punctuation omitted.) Goldberg v. State, 280 Ga. App. 600, 602 (1) (634 SE2d 419) (2006).

 (Punctuation omitted; emphasis supplied.) Toomer, 292 Ga. at 54 (2) (b), quoting Purkett v. Elem, 514 U. S. 765, 768 (115 SCt 1769, 131 LE2d 834) (1995).

 Jackson v. State, 288 Ga. App. 339, 344 (1) (b) (ii) (654 SE2d 137) (2007), citing Dukes v. State, 273 Ga. 890, 891-892 (2) (548 SE2d 328) (2001); Williams v. State, 271 Ga. 323, 325 (2), n. 3 (519 SE2d 232) (1999). See also Alexander v. State, 273 Ga. 311, 312 (2) (540 SE2d 196) *198 (2001) (holding that the criminal arrest history even of a juror’s family members “is a sufficiently race-neutral reason to satisfy the dictates of Batson’).

 (Punctuation omitted.) Floyd v. State, 272 Ga. 65, 68 (3) (525 SE2d 683) (2000).

 Dukes, 273 Ga. at 891 (2). See also Lewis v. State, 262 Ga. 679, 680 (2) (424 SE2d 626) (1993) (“The exercise of a peremptory challenge must not be based on either the race of the juror or the racial stereotypes held by the party.”) (punctuation omitted).

 As noted above, the State argued in part that Olympic swimmer Ryan Lochte’s notorious display of a “grill” during the 2016 Summer Olympics shows that white people also have gold teeth because Lochte is white. But the fact that afashion idiom has developed in popular culture does not negate its stereotypical nature, even when applied with an ostensibly positive or celebratory intent. The State also argues that the gold teeth were comparable to unusual adornment, such as an eyebrow ring, citing Chandler v. State, 281 Ga. 712, 716-717 (3) (642 SE2d 646) (2007), 6which deemed having such “body art” to be race neutral. But the Chandler opinion notes that an eyebrow ring does not implicate a racial stereotype, citing by comparison Rector v. State, 213 Ga. App. 450, 454 (2) (444 SE2d 862) (1994), which, as more fully explained below, adopted atrial court’s findingthat having a gold tooth was not an acceptable race-neutral rationale for striking a juror. See Chandler, 281 Ga. at 717 (3), citing Rector, 213 Ga. App. at 454 (2).

 See Rector, 213 Ga.App. at 454(2) (no abuse of discretion in ruling that having gold teeth is a racial stereotype under Batson). See also January v. Outokumpu Stainless USA, No. 15-00040 (S.D. Ala. Jul. 28, 2016) (memorandum opinion in an employment discrimination case recounting a fellow employee’s bigoted comment “that only black people wear gold teeth and if a white employee spent too much time around the [African-American] Plaintiff, he would begin wearing gold teeth also”); Medina v. Secretary, Dept. of Corrections, No. 11-20907 (S.D. Fla. Nov. 24, 2015) (prosecutor criticized the defendant’s allegedly fabricated defense as a “racist stereotype” implicating “some young black guy [with] gold teeth”); Sears v. Home Depot, USA, 943 S2d 1219, 1231-1232 (La. Ct.App. 2006) (noting in an employment discrimination case that a fellow employee’s comment that “he would have to buy sunglasses because [an] African-American [co-worker] had so many gold teeth” was part of a series of racially “insensitive [remarks] reflecting profound ignorance on the part of the speaker”); Yancey v. Sheriff of Jefferson County, No. 2002-CA-000229 (Ky. Ct.App. Feb. 20, 2004) (unpublished) (noting in an employment discrimination case brought by an African-American plaintiff that a comment that “everybody down there had gold teeth in their mouth” was “mildly offensive”) (punctuation omitted). See also Urban Dictionary, http://www.urbandictionary.com/define.php?term= gold+teeth (retrieved Jan. 4, 2017) (noting the origin of obtaining gold teeth as a sign of freedom and wealth among emancipated slaves as well as general contemporary adaptation in hip hop culture). Compare Fields v. State, No. 05-02-01665-CR (Tex. Crim. App. Jan. 14, 2004) (unpublished) (employing mixed motive analysis and finding no Batson violation based on a *199 stated gold-teeth rationale because “there was no statistical information presented to show whether African)-] Americans have more gold teeth . . . [and] the prosecutor stated that [if the juror] had been white, he would have struck him” for the same reason) (punctuation omitted); Hayes v. State, 2003 Tex.App. LEXIS 3827 (Tex. Ct.App. May 1, 2003) (unpublished) (employing mixed motive analysis and listing gold teeth along with other race-neutral reasons such as “body language”). Although a number of the above cases are unpublished, we do not rely on their precedential value in articulating a legal rule. Instead, these cases demonstrate the use of gold teeth as a racial stereotype in American culture.

 The fact that a racial stereotype is intended to describe only a subgroup of a particular race does not make it permissible under Batson. See, e.g., Payton v. Kearse, 329 S.C. 51, 56 (I) (495 SE2d 205) (1998) (granting a new trial based on a party’s strike of a “redneck,” noting that the term “stereotypes a subgroup of the white race”).

 The existence of this stereotype was explicitly identified by defense counsel at the original hearing and on remand, and it was implicitly noted by the trial court during the Batson challenge when she immediately interrupted defense counsel as he began to address the State’s gold-teeth rationale and said, “I’m not impressed by the [State’s] gold[-]teeth argument. I’m not impressed by his gold[-]teeth argument .... I’m not going to accept the gold[-]teeth" rationale from the State. (Emphasis supplied.)

 See Toomer, 292 Ga. 49, 54 (2) (b) (“The explanation for the strike ... needs to be facially race-neutral.”). We note that nothing in the record demonstrates any actual racial animosity on the part of the prosecutor in justifying his strike. But this does not relieve the State of its burden to articulate a race-neutral basis for the strike. See generally Toomer, 292 Ga. at 55 (2) (b) (stating that the overarching goal of Batson is ensuring that considerations of “race and gender (have) no place in the administration of justice”).

 (Emphasis omitted.) Purkett, 514 U. S. at 768.

 213 Ga. App. 450 (444 SE2d 862) (1994). We respectfully disagree with Judge Self’s characterization that Rector was disapproved by the Supreme Court of Georgia in Toomer. While Toomer does disapprove of any requirement for case-relatedness in step two of Batson, Rector was focused on the existence of race neutrality, not case-relatedness. As this Court explained in Rector, “[i]n the case sub judice, the trial court was concerned ‘about the gold tooth and the gold in the mouth explanation given by the State and she questioned whether that is a racially neutral reason or whether that’s a stereotype.’ ” (Punctuation omitted; emphasis supplied.) Rector, 213 Ga.App. at 454 (2). Thus, this Court did not reverse in Rector because the State failed to meet a case-relatedness requirement; the Court reversed because the State failed to meet the race-neutral requirement. Put another way, no longer requiring parties to articulate reasons related to the case does not relieve them of their obligation to justify their strikes with race-neutral reasons. That Rector couched its conclusion in terms of case-relatedness merely reflects the terminology applicable at the time, as well as the enduring fact that “race and gender (have) no place in the administration of justice.” Toomer, 292 Ga. at 55 (2) (b). But it remains good law that articulating a race-based reason (also unrelated to the case) is insufficient to meet a party’s burden at step two under Batson . See Toomer, 292 Ga. at 54 (2) (b) (“The [step two] explanation for the strike only needs to be facially race-neutral.”) Nothing in Toomer changed this.

 Id. at 452 (2).

 See id.

 (Punctuation omitted.) Id. at 454 (2).

 Id. This Court reversed in Rector despite the State’s argument that “having a gold tooth in the front of your mouth is almost a kind of a — I don’t know. It’s kind of cool or something like that. It’s almost a thumb your nose at society kind of thing to me.” Id. at 453 (2).

 (Punctuation omitted.) Id. at 454-455 (2). As noted in n. 6, at the initial Batson hearing, the trial court appears to have engaged in an approach adopted in other jurisdictions known as the “dual motivation” or “mixed motivation” analysis. See, e.g., Tokars, 95 F3d at 1533 (IV) (discussing the dual motivation analysis); Guzman, 85 SW3d at 247 (II) (B) (outlining dual or mixed motivation analysis). Under that approach, a strike proponent who articulates a facially discriminatory reason still has an opportunity to prove “by a preponderance of the evidence that the strike would have been exercised even in the absence of the discriminatory motivation.” Tokars, 95 F3d at 1533 (IV) (addressing a facially discriminatory reason but affirming a finding of neutrality because of other concurrent, non-pretextual neutral reasons for the strike). This approach is not consistent with Georgia’s current case law.

 263 Ga. 664 (437 SE2d 463) (1993).

 Id. at 667 (1) (c), 667-668 (1) (c), n. 4 (discussing cases collected in Strozier v. Clark, 206 Ga.App. 85, 88 (5) (424 SE2d 368) (1992)). See, e.g., State v. Tomlin, 299 S.C. 294, 299 (384 SE2d 707) (1989) (reversing and holding that the juror’s demeanor was a permissible basis for a strike under Batson but the prosecutor’s characterization that the African-American juror “shucked and jived” as he walked to the microphone was a racial stereotype that “clearly violates the mandates of Batson’) (punctuation omitted). Compare Knuckles v. State, 236 Ga. App. 449, 451-453 (1) (a), (b) (512 SE2d 333) (1999) (affirming a conviction and finding that no Batson violation occurred despite the trial court’s inferential finding of a pattern of discrimination because a race-neutral reason (nose ring) was given, and there was no facially race-based reason given). In Strozier, the second reason given was facially race-based, so this pervaded the exercise of the strike no matter what other neutral reasons were given. See Strozier, 263 Ga. at 87 (5).

 See Rector, 213 Ga. App. at 455 (2).