RAY, Judge,
dissenting.
Like the majority, when I read the briefs in this case and began to study the case file, I was uneasy with the decision of the State to strike the prospective juror based, in part, on the fact that he had gold teeth. In our racially diverse society, I understand the value in having juries which are selected to settle our civil and criminal matters reflect the diversity of their communities. Thus, I understand why these cases landed in the Court of Appeals to examine whether the *202 State violated Batson v. Kentucky, 476 U. S. 79 (106 SCt 1712, 90 LE2d 39) (1986) in striking Juror No. 31.
Yet, unlike the majority which finds that the State impermissibly relied on a racial stereotype in striking Juror No. 31,1 do not believe that the State’s motivation in striking this juror is so clear-cut. Juror No. 31 had previously been charged with a felony theft, such charge which had been negotiated down to a misdemeanor criminal damage charge to which he pled guilty.[30] During my nearly 11 years on the trial bench, I don’t believe that I ever presided over a case where the State allowed anyone who had a conviction for anything more than a routine traffic offense to be seated on the jury. As I understand it, prosecutors are afraid to allow a person who has previously been charged with a crime, much less convicted of one, to serve on a jury, as such individual might be mad at the authorities due to his or her own experience in the criminal justice system or might be more sympathetic with or identify with the accused.
In its opinion, the majority concludes that the State’s decision to strike Juror No. 31 was, essentially, illegal per se.[31] However, that is not what the trial court concluded upon remand. And, while I certainly agree that the striking of an African-American juror because he or she has gold teeth might be discriminatory, I do not believe that to be automatically so. Specifically, the trial court found that the State proffered a race neutral explanation for the strike, that is, that a person who has the entirety of his teeth encased in gold crowns, whatever his or her race, seeks “to look different from the rest of the world, and be different, from everyone else,” much like “people who [have] dyed their hair blue, or [have] nose rings and so forth.” The trial court concluded that potential jurors “who want to be different, [in] such an obvious way do not usually make good jurors, they tend to not want to go along with the majority in reaching a verdict. They want to be different.” In accepting this basis for the strike, the trial court concluded that the Defendants did not prove discriminatory *203 intent.[32] Of course, a “trial court’s finding as to whether the opponent of a strike has proven discriminatory intent is entitled to great deference and will not be disturbed unless clearly erroneous.” Woodall v. State, 294 Ga 624, 627 (3) (754 SE2d 335) (2014) (citation and punctuation omitted).
Had I been the presiding judge in this case, I may very well have not accepted the State’s rationale for exercising this strike. Yet, the trial court judge who both presided at the original jury selection and conducted the hearing on this issue upon remand believed that the State did not discriminate and had a legitimate purpose in striking this juror. Indeed, even the majority concludes in its opinion that the transcript does not reveal any actual racial animosity on the part of the prosecutor.
Let me state clearly that I agree that the use of a racial stereotype to eliminate a potential juror is wrong and, indeed, prohibited by our law. However, I am not prepared to say that such was the situation here under the totality of the circumstances and in light of the trial court’s decision after carefully considering the facts of this case, listening to the prosecutor and his rationale, evaluating his demeanor and his credibility, and considering the genuineness of his character.
Accordingly, I believe that as a court for the correction of errors of law and not for deciding disputed issues of fact, we are bound to accept the conclusion of the trial court that the defendants have not proven a discriminatory intent in the striking of Juror No. 31 and believe that the trial court did not clearly err. I recognize that other trial judges may have reached a different conclusion if faced with these facts at trial; yet, I do not believe that these facts demand a conclusion as a matter of law that the State violated Batson with its use of a peremptory strike to remove this juror.
Accordingly, I hereby dissent.
I am authorized to state that Presiding Judge McFadden, Judge Rickman, and Judge Self join in this dissent.

 Apparently, the prosecutor and defense counsel cannot agree as to which charge this juror faced before his plea negotiations, and there is no transcript of voir dire to aid us in our review. Thus, I have relied on the trial court’s conclusion as to this point as found in its order dated March 10, 2015.

 The majority cites to this Court’s ruling in Rector v. State, 213 Ga. App. 450 (444 SE2d 862) (1994), to support its holding. However, I point out that the trial court in Rector did not accept the prosecutor’s rationale for why he had struck the juror. We held that there was no abuse of discretion in the trial court’s ruling that the prosecutor’s logic was not race neutral. Of course, in this case, the trial court found that the prosecutor’s reasons for striking the juror were race neutral.

 I note that at no time did the defendants introduce any evidence with regard to the history of gold teeth in the African-American community, discrimination against individuals who have gold teeth, or anything else. The defendants relied solely on their attorneys’ arguments.